### EEKHOUT v. COLE.

(Filed May 27, 1904).

1. ATTORNEY AND CLIENT—*Privileged Communication—Witnesses.*

    A statement by a client to his attorney that he had procured a loan of some money to pay a fee in a case settled up is not a privileged communication.

2. EXAMINATION OF WITNESSES — *Exceptions and Objections — Judge.*

    Where an objection to a question was overruled, and before an answer was given the attorney told the witness to stand aside, it was not error for the court to repeat the question and require the witness to answer it.

3. EXECUTORS AND ADMINISTRATORS—*Contracts.*

    A deposit by a person under a previous contract, the same being for the performance of the contract and withdrawn by mutual consent and loaned to the other party to the contract, is a valid claim against the estate of the lendee.

4. EXECUTORS AND ADMINISTRATORS—*Contracts—Evidence.*

    The withdrawal by mutual consent of a deposit by a person, the same being for the performance of a contract is not conclusive evidence that the agreement of forfeiture should no longer be a part of the contract.

ACTION by W. B. Eekhout against C. W. Cole, heard by *Judge W. A. Hoke* and a jury, at November Term, 1903, of the Superior Court of CHEROKEE County.

The plaintiff prosecutes this action for the recovery of five hundred dollars, alleged to have been "advanced and loaned" to defendant's intestate, A. G. Kinsey, on November 4, 1901. The plaintiff averred a demand and refusal to pay. Defendant denied each of the allegations of the complaint except the demand and refusal to pay, which he admitted. By way of further defense and counter claim he averred that on July 27, 1901, the plaintiff entered into a contract with the defendant's intestate, by which it was agreed that said Kinsey should secure control of at least a majority of all the stock of the Notla Consolidated Marble, Iron and Talc Company, to be sold to the plaintiff for $5.80 per share. Said stock was to be deposited in escrow in the Bank of Murphy, provided a certain contract of same date between the stockholders of said company and said Eekhout, in regard to the sale of their holdings in said company, be entered into. The agreement contained the following provision: "And in order to show good faith, said W. B. Eekhout has deposited five hundred dollars in the Bank of Murphy, to be forfeited to the said A. G. Kinsey, or assign, if I, the said W. B. Eekhout, fail to comply with the contract referred to. In the event the said A. G. Kinsey fails to get a majority of stock subscribed to said contract of even date, said amount of five hundred dollars shall be subject to the order of W. B. Eekhout by August 15, 1901, and shall not be forfeited in any event if contract of even date be carried out."

Exhibit A attached to the answer is a contract entered into between W. B. Eekhout and certain shareholders of said Iron and Talc Company, the purport of which is that the shareholders agreed to sell their stock to said Eekhout upon certain terms and conditions fully set out herein. The time fixed for performance of said contract is August 1, 1901. The defendant alleged that his intestate, pursuant to said

contract, procured at great outlay and expense a majority of said stock and deposited the same in the Bank of Murphy for said Eekhout. That said Eekhout failed in every respect and in every particular to comply with his contract. That by reason of such failure said Eekhout became indebted to the defendant's intestate in the sum of five hundred dollars. The plaintiff, replying to the new matter and counter claim, denied each and every allegation in regard thereto.

The Court, without objection, submitted the following issues to the jury: "1. Is defendant indebted to plaintiff; and if so, how much? 2. Is plaintiff indebted to defendant on counter claim; and if so, how much?"

Plaintiff introduced Ben Posey, who testified to the handwriting of A. G. Kinsey and his signature to the receipt, which was in the following words:

"MURPHY, N. C., 4 Nov., 1901.

"Received of W. B. Eekhout the sum of five hundred dollars, being the money lodged in the Bank of Murphy in escrow with a certain contract between the said Eekhout and myself and now withdrawn by mutual consent.

(Signed)          "A. G. KINSEY."

The plaintiff thereupon testified that he deposited five hundred dollars in the bank and that he drew the same out November 4, 1901. He admitted the execution of the contract of July 27, 1901, and the writing of certain letters put in evidence. Mr. Posey was recalled and testified that he was attorney for A. G. Kinsey on November 4, 1901; that Judge Ferguson and himself had appeared as counsel for him in a suit between Kinsey and Emerson. That the suit was concluded and Kinsey wished to employ them in another suit with one Oliver Kinsey. That witness told Kinsey that they wished payment of their fees. Kinsey replied that

he had no money at that time, when witness insisted on
payment of fees for himself and Judge Ferguson. Counsel
asked witness what Kinsey said to him about borrowing
the money from Eekhout. Defendant's counsel objected on
the ground that witness, being at that time Kinsey's attor-
ney, could not testify to a transaction between them. Objec-
tion overruled, defendant excepted. Upon the Court's
announcing its ruling, the counsel for plaintiff stated that
he had no further question to ask witness and told him to
stand aside. "The Court perceiving that no answer had
been made to the question, and thinking this was an inad-
vertence of counsel, and moreover desiring to have the facts
about the matter before the jury, asked the witness what
Kinsey did say about the money—about borrowing the $500
fee. Counsel for defendant objected on same ground, that
it was a transaction between attorney and client, and second,
because counsel for plaintiff having directed witness to stand
aside, the Court had no right to interpose and request an
answer from witness. Objection overruled and defendant
again excepted. The witness then stated that when he told
Kinsey he must have his fee of $500 Kinsey stepped out,
remained awhile and then came back in the room and said
that he had gotten the money; that he and Eekhout had
agreed to withdraw from the bank the $500 on deposit and
Eekhout had agreed to lend it to him. The next morning
Kinsey came in and said that he had arranged the matter
with Eekhout; that the money had been withdrawn by
mutual consent and put in the bank to his (Kinsey's) own
credit and subject to his check, and Kinsey then gave wit-
ness his check for $250, also drew a check for Ferguson
for $250, the amount of attorney's fees, and the bank paid
them. Plaintiff rested.

Defendant introduced contracts herein referred to, a let-
ter from Eekhout to Kenyon, cashier of bank, enclosing

agreement between Kinsey and himself and check for $500; also stockholder's contract, "Exhibit A."

Plaintiff then introduced J. H. Carter, vice-president of the bank, who testified that he had a package containing certificates of stock of the Iron and Talc Company, "Exhibit 209." That the endorsments upon the envelopes were made by himself, except certain words which are not material. Defendant then introduced the envelope containing the following endorsement: "This envelope contains the following shares of stock of the Notla Cons. M. I. and Talc Co., to-wit." (Then follows a list of the certificates, aggregating 3,721 shares, deposited with Bank of Murphy subject to contract between stockholders and W. B. Eekhout, dated July 17, 1901). It was admitted that the envelopes contained the stock which constituted a majority of the stock issued by said company. The defendant asked the Court to charge the jury that there is no evidence that the money paid Mr. Posey is the money deposited with Eekhout under said agreement. 2d. That the jury must be satisfied that the money received by Mr. Posey was a part of the identical $500 deposited by Eekhout. 3d. That there is no evidence of any abandonment of the forfeiture feature of the contract. All of said prayers were denied, and the Court, in part, charged the jury that plaintiff and A. G. Kinsey, the intestate of the defendant, entered into a contract that Kinsey was to procure for Eekhout a majority of stock in the Marble Company and Eekhout was to pay for it $5.80 per share. To show good faith in the matter, Eekhout put in the bank $500 as a forfeit in case of failure on his part to comply with his offer. That if the evidence was believed, Kinsey did procure the stock and Eekhout had failed to take the stock; and if the money had remained in the bank under the original agreement, or if a forfeiture to that amount continued to be a part of the stipulation, then there

was nothing due from defendant to plaintiff; if, however, Kinsey and Eekhout mutually contracted and agreed to withdraw the money from the bank, and the forfeiture should no longer be a part of the stipulation, and after drawing out the money Eekhout lent the money to Kinsey and same had never been paid, then the defendant was indebted to plaintiff in the sum of $500, with interest thereon from time same had been demanded, and nothing would be due on counter claim. The Court here stated the evidence and the arguments of counsel pertinent to the issues. The jury returned a verdict and answered the first issue "Yes, $500 with interest from date of demand, August 15, 1902," and had not answered the second issue. The Court told the jury that if such was their finding of fact and verdict on the first issue, that it should answer the next issue "No." If they believed the testimony there was nothing due on counter claim, and they would answer the second issue "No." The jury so answered the second issue. Defendant objected and excepted.

From a judgment on the verdict the defendant appealed.

*Axley & Axley,* for the plaintiff.
*E. B. Norvell,* for the defendant.

CONNOR, J. We find no valid objection to the question asked Mr. Posey. It seems that at the time of the transaction had by him with Mr. Kinsey his employment in the suit with Emerson was at an end and the employment in the other suit had not commenced. However this may be, the communication was not in any legal sense in regard to the business or employment in respect to which the privilege may be invoked. We think the testimony of Mr. Posey comes neither within the letter or spirit of the law. Greenleaf Ev., Vol. I, page 380 (16 Ed.). We find no suggestion

that Mr. Posey was or had been Kinsey's attorney in regard to the purchase of the stock or the contract made respecting it. The exception must be overruled.

We see no objection to the course pursued by his Honor in asking the question of the witness. The reason assigned by him fully explains his action. It has been frequently said by this Court that Judges do not preside over the courts as moderators, but as essential and active factors or agencies in the due and orderly administration of justice. It is entirely proper, and sometimes necessary, that they ask questions of a witness so that the "truth, the whole truth, and nothing but the truth" be laid before the jury. The trial of causes must not be permitted to degenerate into a mere game of chance or trial of skill, the victory going not to him whose cause is just but to the most skillful player. Learned and just Judges are appointed to see that suitors have judgment accordingly as they have the right of the controversy. The exception to his Honor's question cannot be sustained.

There is no reversible error in his Honor's charge upon the first issue. If the jury found that by mutual consent of the plaintiff and the defendant's intestate the $500 deposited in the bank, to be forfeited if the plaintiff failed to comply with the contract, was withdrawn and the amount loaned to the defendant's intestate, we see no good reason why it was not a valid contract and enforcible against the defendant's intestate. It is unfortunate that the parties left the matter in so much uncertainty. One of them is dead, and by the law the lips of the other are sealed. In this condition of the matter the jury had nothing to guide them except the receipt and the testimony of Mr. Posey. The conclusion to be drawn from this evidence was for them.

We do not concur with his Honor's view upon the second issue. He charged the jury that if they believed the evi-

dence Kinsey did procure the stock and Eekhout failed to take it; that if the money had remained in the bank under the original agreement, or if a forfeiture to that amount continued to be a part of the stipulation, there was nothing due from the defendant to the plaintiff, but that if they mutually agreed to withdraw the money from the bank and that the forfeiture should no longer be a part of the stipulation, nothing would be due on the counter claim. We do not think the agreement to withdraw the money from the bank constituted conclusive evidence that the forfeiture should no longer be a part of the stipulation. It may well be that Kinsey, being in need of money, agreed to the withdrawal of the amount deposited upon condition that it be loaned to him, without releasing his rights under the contract. If the entire contract, with all the rights and liabilities accruing therefrom, was to be cancelled, it is strange that the stock was not withdrawn from the custody of the bank and returned to the shareholders. The giving of the receipt, instead of a note, indicates that the transaction was not closed. So far as appears upon the surface the $500 had been forfeited to Kinsey and he was entitled to demand and receive it. It may well be that he, to supply his immediate needs, consented to the withdrawal, leaving his rights under the contract open for adjustment. His Honor was of the opinion that if the agreement was "that the forfeiture should no longer be a part of the contract," then Kinsey had no other or further rights thereunder. We think he should have left the answer to the second issue to the jury to say whether, notwithstanding the agreement to withdraw the $500, the defendant was not entitled to recover of the plaintiff the damage sustained by the breach of the contract, and to fix the amount of such damage. He alleges that his intestate, at great expense and outlay of money, procured the stock and the plaintiff failed to take it in accord-

ance with his contract. We see no reason why he may not recover, by way of counter claim, such amount and other damages within the contemplation of the parties and proximately resulting from such breach of contract.

The evidence sent up is meager, and we can do no more than direct a new trial upon the second issue. It is so ordered.

New Trial.