STATE OF NORTH CAROLINA v. DENNY JUNIOR FREEMAN

No. 25

(Filed 15 March 1972)

1. **Criminal Law § 15— change of venue — local prejudice — failure of record to show ruling on motion**

Defendant in a first degree murder prosecution is not entitled to a new trial by reason of the failure of the record to show a ruling by the trial court upon a motion for change of venue on account of local prejudice which was prepared and filed by defendant without the knowledge of his counsel, since proceeding with the trial was, in effect, a denial of the motion, and the record shows no abuse of discretion in such denial.

2. **Criminal Law § 99— expression of opinion by court**

It is error for the trial judge to express or imply, in the presence of the jury, any opinion as to the guilt or innocence of the defendant, or as to any other fact to be determined by the jury, or as to the credibility of any witness. G.S. 1-180.

3. **Criminal Law § 99— questions by trial judge — clarification of testimony**

The trial judge may direct questions to a witness for the purpose of clarifying his testimony and promoting a better understanding of it.

4. **Criminal Law § 99— questioning of witness by trial judge — expression of opinion**

In this homicide prosecution, the trial court did not express an opinion in asking one State's witness thirteen questions or in asking a second State's witness five questions, where each question was designed to clarify the testimony of the witness as to the location of the defendant and the deceased at the time the homicide occurred.

5. **Criminal Law § 99— questioning of defendant by trial judge — expression of opinion**

In this homicide prosecution, the trial court did not express an opinion in any of nine questions propounded to defendant where their purpose was to enable the court to rule upon objections by the solicitor, to clarify a simple, affirmative answer to a question asked in the alternative, to clarify defendant's ambiguous answers to questions by the solicitor concerning a prior conviction, or to enable the court to make an accurate note concerning defendant's testimony as to his reason for following deceased out of the poolroom where the homicide occurred.

6. **Criminal Law § 99— questions asked defendant — sustaining of solicitor's objections — expression of opinion**

The trial court did not express an opinion on the credibility or guilt of defendant in sustaining the solicitor's objections on ten occasions to questions propounded to the defendant on direct examina-

State v. Freeman

tion, the ruling in each instance being the customary ruling, "Objection sustained," and the rulings being interspersed with six others overruling objections by the solicitor.

**7. Homicide § 15; Criminal Law § 169— intent to kill — exclusion of testimony by defendant — harmless error**

It was error for the trial court in a first dergee murder prosecution to sustain the solicitor's objection to a question propounded to the defendant by his counsel as to whether defendant at any time intended to kill the deceased; however, such error was harmless where the defendant thereafter testified without objection that he did not intend to hit deceased with the bullets he fired, and so did not intend to kill him, and the court charged the jury that in order to convict defendant of first degree murder it must find beyond a reasonable doubt that defendant specifically intended to kill the deceased.

**8. Homicide § 21— first degree murder — sufficiency of State's evidence**

There was ample evidence to support the submission of the charge of first degree murder to the jury where the State's evidence tended to show that defendant armed himself, concealed his weapon, sought out a confrontation with the deceased, who did not know him, followed deceased from a poolroom and knocked him down, and when deceased retreated back into the poolroom without any attempt to strike the defendant, twice fired his pistol at deceased at close range and thereby caused his death.

**9. Criminal Law § 166— abandonment of assignment of error**

An assignment of error not brought forward into defendant's brief is deemed abandoned.

**10. Homicide § 24— instructions — burden of proof — reasonable doubt**

The trial court adequately instructed the jury that each of the necessary elements of murder in the first degree must be proved beyond a reasonable doubt in order to convict defendant of that charge.

**11. Homicide § 30— failure to submit involuntary manslaughter — harmless error**

In this first degree murder prosecution wherein defendant testified that he did not intend to hit deceased with the bullets he fired, the trial court's failure to charge that the jury might return a verdict of involuntary manslaughter constituted harmless error, where the court clearly instructed the jury that an intent to kill was an element of first degree murder, and the jury returned a verdict of guilty of first degree murder with a recommendation of life imprisonment, it being clear from the verdict that the jury did not believe defendant's testimony as to his intention and that failure to charge on involuntary manslaughter did not affect the verdict.

APPEAL by defendant from *Cohoon, J.,* at the 6 September 1971 Session of CHOWAN.

Under an indictment, proper in form, the defendant was tried for the murder of George Thomas Smith. The jury re-

turned a verdict of guilty of murder in the first degree, with recommendation that the defendant be sentenced to imprisonment for life. Judgment was entered in accordance with the verdict.

The evidence for the State is to the following effect:

At approximately 10:30 p.m. on 30 April 1971, Smith was playing pool in the Pickwick Pool Hall in Edenton. The defendant came in and shortly thereafter asked a bystander if he knew George Smith. The bystander pointed out Smith to the defendant. Thereafter, Smith left the pool hall. The defendant followed him out. In a few minutes Smith came back in, bleeding at the mouth. He asked that the police be called. At that instant the defendant, standing outside the pool hall, fired two pistol shots through the screen door. One struck Smith in the neck, passing through the esophagus, the jugular vein and the carotid sheath.

Smith was immediately carried to the local hospital, given medical attention and promptly transferred by ambulance to the hospital in Elizabeth City. Shortly after arrival there, he died. In the opinion of the surgeon who examined him at the Elizabeth City Hospital, the cause of death was the gunshot wound in the neck.

A police officer, on routine patrol of the poolroom area heard someone, not in sight, say, "I am going to blow your G.d. head off." Proceeding in the direction of the voice, the officer observed the defendant alone on the sidewalk, eight to ten feet from the door of the poolroom, and saw him point a pistol toward the door and fire it twice. The officer then disarmed and arrested the defendant.

The defendant's evidence was to the following effect:

Smith and his wife were separated. Thereafter, the defendant began going with Mrs. Smith. A few days prior to the shooting, the defendant, while visiting in the home of Mrs. Smith's mother, where Mrs. Smith resided, heard some man in another part of the house, whom he took to be Smith, then unknown to him, and whose voice he subsequently identified as Smith's voice, say that he was going to kill "that short legged, sawed off s.b." and that he had a shotgun in the back seat of his car. The defendant, believing this declaration referred to him, and having been told by Mrs. Smith's sister that Smith had

State v. Freeman

a gun, attempted unsuccessfully to have a warrant issued for Smith. Nothing further happened on that occasion.

On the night of the shooting, the defendant entered the poolroom and, after having Smith pointed out to him, followed Smith out of the poolroom. He called to Smith, who was preceding him along the sidewalk. When Smith stopped, the defendant walked up to him, identified himself and told Smith he was the one who had been dating Smith's wife. Smith first denied and then admitted that he had said he was going to blow the defendant's brains out, and also first denied and then admitted that he had threatened to kill his (Smith's) two children who were living with Mrs. Smith. Upon these admissions by Smith, the defendant struck Smith with his fist and knocked him down. Smith got up and walked to the poolroom door. He made no attempt to strike the defendant. The defendant turned partially around to leave the scene and heard someone say, "I am going to blow your G.d. brains out." He could not see Smith clearly behind the screen door of the poolroom and, in fear of his own life, pulled his pistol out of concealment under his shirt and shot. He "didn't have no intention of hitting him," but was "more or less trying to scare him and trying to keep him inside that poolroom."

The defendant never saw Smith with any kind of a weapon. The defendant had previously been convicted and fined for assault with a deadly weapon and had been convicted three times for the offense of escape, the record not showing the offense or offenses for which he was serving a sentence at the time of the escapes.

*Attorney General Morgan and Associate Attorney Speas for the State.*

*Walter H. Oakey, Jr., for defendant.*

LAKE, Justice.

The defendant is not entitled to a new trial by reason of the failure of the record to show a ruling by the trial court upon a motion prepared and filed by the defendant, himself, for a change of venue, this being his Assignment of Error No. 1. Prior to the filing of this document, competent, experienced counsel was appointed to represent the defendant and has represented him diligently at all stages of this proceeding. The motion

was prepared and filed without the knowledge of the defendant's counsel. Upon receipt of the document, the presiding judge wrote the defendant, with a copy to his counsel, advising him that he had court-appointed counsel, that he should communicate with his counsel at once and that any motions "that are to be made can be made through him." The motion for change of venue was not renewed.

Thereafter, at the defendant's arraignment, the court, prior to ordering the drawing of a special venire from the Chowan County jury box, inquired, "Is there anything before I proceed with this order?" The defendant's counsel replied, "No, Sir, we are ready." The order for the special venire was thereupon entered and the trial of the defendant proceeded.

[1] The defendant's contention, in his self-prepared motion, was that the deceased, a resident of Edenton, had many friends therein, whereas the defendant was from "out of town," and a newspaper, circulated in the Town of Edenton, and radio broadcasts had contained vivid accounts of the incident, which would prevent the selection of a fair jury. The granting of a motion for change of venue on account of local prejudice rests in the discretion of the trial court. *State v. Ray*, 274 N.C. 556, 568, 164 S.E. 2d 457; *State v. Allen*, 222 N.C. 145, 22 S.E. 2d 233. There is nothing whatever in the record to indicate abuse of discretion if, indeed, the motion filed by the defendant should not be deemed waived or withdrawn by his counsel. Proceeding with the trial was, in effect, a denial of the motion. Nothing in the record indicates that the defendant exhausted the peremptory challenges allowed him by law in the selection of the jury.

Assignments of Error 2, 3 and 5 are to questions directed by the court to witnesses for the State and to the defendant as a witness in his own behalf, the contention being that thereby the court indicated to the jury an opinion that the defendant was guilty and reflected upon his credibility. The defendant concedes that the questions would not have been improper had they been asked by the solicitor.

[2, 3] It is elementary that it is error for the trial judge to express or imply, in the presence of the jury, any opinion as to the guilt or innocence of the defendant, or as to any other fact to be determined by the jury, or as to the credibility of any witness. It is immaterial how such opinion is expressed or implied, whether in the charge of the court, in the examination

of a witness, in the rulings upon objections to evidence or in any other manner. G.S. 1-180; *State v. Atkinson,* 278 N.C. 168, 177, 179 S.E. 2d 410; *State v. Belk,* 268 N.C. 320, 150 S.E. 2d 481; *State v. Douglas,* 268 N.C. 267, 271, 150 S.E. 2d 412; *State v. Owenby,* 226 N.C. 521, 39 S.E. 2d 378. It is equally clear that, as the defendant here concedes, the trial judge may direct questions to a witness for the purpose of clarifying his testimony and promoting a better understanding of it. The rule with reference to such questions by the court is thus stated by Justice Huskins in *State v. Colson,* 274 N.C. 295, 308, 163 S.E. 2d 376, cert. den., 393 U.S. 1087:

> "Defendant assigns as error certain questions put to witnesses by the trial judge during the trial. The Court of Appeals found no merit in this assignment, and we agree. 'It has been the immemorial custom for the trial judge to examine witnesses who are tendered by either side whenever he sees fit to do so. . . . ' *State v. Horne,* 171 N.C. 787, 88 S.E. 433. Such examinations should be conducted with care and in a manner which avoids prejudice to either party. If by their tenor, their frequency, or by the persistence of the trial judge they tend to convey to the jury in any manner at any stage of the trial the 'impression of judicial leaning,' they violate the purpose and intent of G.S. 1-180 and constitute prejudicial error. *State v. McRae,* 240 N.C. 334, 82 S.E. 2d 67; *Andrews v. Andrews,* 243 N.C. 779, 92 S.E. 2d 180; *State v. Peters,* 253 N.C. 331, 116 S.E. 2d 787; *State v. Lea,* 259 N.C. 398, 130 S.E. 2d 688. Even so, this Court has said that 'Judges do not preside over the courts as moderators, but as essential and active factors or agencies in the due and orderly administration of justice. It is entirely proper, and sometimes necessary, that they ask questions of a witness so that the "truth, the whole truth, and nothing but the truth" be laid before the jury.' *Eekhout v. Cole,* 135 N.C. 583, 47 S.E. 655. We have examined the questions by the judge to which exception was taken, and in our opinion no prejudice resulted from them. The questions served only to clarify and promote a proper understanding of the testimony of the witnesses and did not amount to an expression of opinion by the judge. *State v. Carter,* 233 N.C. 581, 65 S.E. 2d 9; *State v. Grundler,* 251 N.C. 177, 111 S.E. 2d 1."

It is, of course, immaterial upon this point that it was not the motive of the trial judge to convey any opinion of his own to the jury, or that his expression or intimation of such opinion was inadvertent. *State v. Lea,* 259 N.C. 398, 130 S.E. 2d 688. Upon appeal, we must examine such questions or comments by the court with care to see if a juror could reasonably infer therefrom that the judge was intimating an opinion as to the credibility of the witness or as to any fact to be determined by the jury. If so, the defendant must be given a new trial. Much depends upon tone of voice and facial expressions not discoverable in the printed record. The trial judge must be constantly alert to avoid the expression of his opinion in any manner whatever.

It is the duty of the trial judge, in his charge to the jury, to review the evidence to the extent necessary to apply the law thereto. He must also rule upon the motions, if any, of the defendant for a judgment of nonsuit. Obviously, in order to perform these duties, the judge must hear and understand the answers given by a witness to questions propounded by counsel. He may, with care, propound questions of his own to a witness for this purpose.

[4] We have carefully examined the thirteen questions propounded by the court to the State's first witness, Tom White, to each of which the defendant took an exception. Each was designed to clarify the testimony of this witness as to the location of the witness, the defendant and Smith at the time of the firing of the shots about which the witness had testified. We find nothing therein which could reasonably be construed as intimating any opinion by the court concerning these matters, the credibility of the witness or the guilt of the defendant. Several of these questions were the result of unclear answers by the witness to a previous question by the court.

Similarly, the five questions which the court asked the State's witness Grandy were designed to ascertain the respective positions of the defendant and Smith with reference to the poolroom door at the time of the shooting, which this witness had testified he observed. Nothing in the record before us indicates that a juror could reasonably have inferred from any of these questions, or from all of them, that the judge was expressing an opinion as to these facts, the credibility of the witness or the guilt of the defendant.

State v. Freeman

[5] The defendant also excepts to nine questions directed by the court to the defendant, himself, when testifying in his own behalf. Three of these were propounded by the court following objections by the solicitor to questions asked by defendant's counsel. Their purpose was to elicit information which would enable the court to rule properly upon the objection. These questions were entirely proper. Another question was to clarify a simple, affirmative answer to a question asked in the alternative. Four others were to clarify the defendant's ambiguous answers to questions by the solicitor concerning a prior conviction on the charge of assault with a deadly weapon. The remaining question appears to have been to enable the court to make an accurate note concerning the defendant's testimony as to his reason for following Smith out of the poolroom. We find nothing in these questions which could reasonably be deemed by a juror to imply an opinion by the court as to the defendant's credibility or guilt, or as to any fact to be determined by the jury.

[6] The defendant also takes exception to ten rulings of the trial court sustaining the solicitor's objections to questions propounded to the defendant on direct examination. The defendant assigns these rulings as error, not because of any present disagreement as to the competency of the evidence sought to be introduced, but as reflections upon the credibility of the defendant and indications of an opinion of the court concerning his guilt. In each instance the ruling of the court was the customary ruling, "Objection sustained." These rulings, which were interspersed with six others overruling objections by the solicitor, constituted no violation of G.S. 1-180. We find no merit in the defendant's Assignments of Error 2, 3 and 5.

[7] Assignment of Error No. 6 is to the court's sustaining of the solicitor's objection to this question propounded to the defendant by his counsel: "Did you at any time have any intention in your mind of killing George Thomas Smith?" The defendant was on trial for murder in the first degree. A murder not committed by one of the means specified in G.S. 14-17 and not committed in the perpetration of, or attempt to perpetrate, another felony, is not murder in the first degree unless there was, on the part of the defendant, an actual, specific intent to kill. *State v. Propst,* 274 N.C. 62, 70, 161 S.E. 2d 560. Thus, it was error to sustain the objection to this question. Nothing else appearing, this error would entitle the defendant to a new trial.

However, the record shows that, following the objection and prior to the ruling of the court, the witness answered "No." The court did not instruct the jury to disregard the answer. There was no motion to strike. The solicitor merely requested the court to instruct the witness not to answer a question following an objection until the court ruled on the objection. The court so directed the witness. More significantly, as the direct examination of the defendant by his counsel continued, the defendant testified, without objection: "I was shooting at him, but I didn't have no intention of hitting him. I was more or less trying to scare him and try to keep him inside that poolroom." Thus, the jury had before it the defendant's testimony that he did not intend to kill Smith.

In the charge the court specifically instructed the jury that to convict the defendant of murder in the first degree, it must find, beyond a reasonable doubt, every element of the offense, that one element is an unlawful killing with premeditation and that "when we say that the killing must be accompanied by deliberation and premeditation it is meant that there must be a fixed purpose to kill." Again, the court charged: "A specific intent to kill, while a necessary constituent of the element of premeditation and deliberation in first degree murder, is not an element of second degree murder, or manslaughter." Again: "So I instruct you that if upon a consideration of all of the evidence the State has satisfied you from the evidence and beyond a reasonable doubt that the defendant unlawfully, feloniously, wilfully and with malice and premeditation, and deliberation, intentionally shot and killed George Thomas Smith, then you would return one of two verdicts, either guilty of murder in the first degree, or guilty of murder in the first degree with a recommendation at the time of returning your verdict, that the prisoner's punishment be imprisonment for life in the State's Prison, instead of death." The court then further instructed the jury that if the State had failed to satisfy them from the evidence and beyond a reasonable doubt of the defendant's guilt of murder in the first degree they would acquit him of that charge and pass to a consideration of murder in the second degree and of manslaughter.

In view of these instructions and the subsequent admission of the defendant's testimony that he did not intend to hit Smith with the bullets he fired, and so, did not intend to kill him, the above mentioned error must be deemed harmless.

[8] There was ample evidence to support the submission of the charge of first degree murder to the jury and to support the jury's verdict. The evidence for the State, if believed, is sufficient to show that the defendant armed himself, concealed his weapon, sought out a confrontation with Smith, who did not know him, followed him from the poolroom, knocked Smith down and, when Smith retreated back into the poolroom without any attempt to strike the defendant, twice fired his pistol at him at close range and thereby caused his death. There was, therefore, no error in overruling the defendant's motion for judgment of nonsuit on the charge of murder in the first degree or in denying the motion to set aside the verdict on the ground that the evidence failed to show premeditation and deliberation. The defendant's Assignments of Error 4 and 10 are, therefore, overruled.

[9] Assignment of Error No. 7, not being brought forward into the brief of the defendant, is deemed abandoned. *State v. Baldwin,* 276 N.C. 690, 174 S.E. 2d 526; *State v. Barber,* 270 N.C. 222, 154 S.E. 2d 104; *Branch v. State,* 269 N.C. 642, 153 S.E. 2d 343; Rule 28, Rules of Practice in the Supreme Court. We have, nevertheless, examined it and find no merit therein.

[10] In his Assignment of Error No. 8, the defendant contends that the court erred in failing adequately to charge that each of the necessary elements of murder in the first degree must be proved beyond a reasonable doubt in order to convict the defendant of that charge. An examination of the charge discloses that the court instructed the jury: "The defendant, who has not the burden of proof, is not bound to disprove the State's case, for the State must fail if upon the whole evidence it fails to satisfy you, the jury, beyond a reasonable doubt that the defendant is guilty of every element of the offense charged against him in the bill of indictment." The elements of murder in the first degree were set forth and properly defined in the charge. Thereupon, the court instructed the jury: "These elements must be established beyond a reasonable doubt, and found by the jury before a verdict of murder in the first degree can be rendered against the defendant." We find no merit in this assignment of error.

[11] In his Assignment of Error No. 9, the defendant contends that the court erred in failing to instruct the jury that they might return a verdict of guilty of involuntary manslaughter.

The basis of this contention is the defendant's testimony that he did not intend to hit Smith when he fired the pistol. After instructing the jury that to return a verdict of guilty of murder in the first degree, it must find beyond a reasonable doubt that the defendant with premeditation and deliberation shot and killed Smith, the court charged: "A specific intent to kill, while a necessary constituent of the element of premeditation and deliberation in first degree murder, is not an element of second degree murder, or manslaughter, * * * So it is for you to determine as to whether the defendant intentionally used the pistol, and if so if he intentionally shot George Smith. It is not necessary to constitute murder in the second degree that he should have intended his death, but it is necessary that he should have intended to shoot George Smith with the pistol, and that as a result of the act George Smith did in fact die. * * * Now manslaughter, generally speaking, is the unlawful killing of a human being without malice, express or implied, and without deliberation and premeditation. Voluntary manslaughter is an intentional homicide in sudden passion or heat of blood, caused by something which the law recognizes as adequate provocation, and not with malice aforethought and not with premeditation and deliberation. The most common instance of voluntary manslaughter is where one unlawfully and intentionally kills another by reason of anger, suddenly aroused by provocation which the law deems adequate, anger naturally aroused from such provocation and the killing being done before time has elapsed for passion to subside and reason to resume her sway." The court then charged that the jury might return a verdict of guilty of murder in the first degree, guilty of murder in the first degree with a recommendation that the punishment be imprisonment for life, guilty of murder in the second degree, guilty of manslaughter, or not guilty. The final instruction was that if the State had satisfied the jury beyond a reasonable doubt that the defendant "unlawfully, feloniously, wilfully and with malice and premeditation, and deliberation, *intentionally* shot and killed George Thomas Smith" (emphasis added), the jury would return a verdict of guilty of murder in the first degree or guilty of murder in the first degree with a recommendation that punishment be imprisonment for life, but if the State had failed so to satisfy the jury, it would acquit him of murder in the first degree and consider his guilt or innocence of murder in the second degree and if the State had failed

to satisfy the jury as to his guilt on that charge, the jury would consider "his guilt or innocence of voluntary manslaughter if you acquit him on the charge of second degree murder."

Notwithstanding the defendant's testimony as to his intention, and the court's clear instruction that an intent to kill was an element of first degree murder, the jury returned a verdict of guilty of first degree murder with a recommendation that the punishment be life imprisonment. Thus, it is clear that the jury did not believe the defendant's testimony as to his intention. Had it done so, it would have, pursuant to the court's instructions, returned a verdict of guilty of second degree murder or not guilty. The court's failure to charge that the jury might return a verdict of involuntary manslaughter did not, therefore, affect the verdict and must be deemed harmless error.

The defendant has had a fair trial with the aid of able, experienced and diligent counsel. The verdict of the jury is fully supported by the evidence and we find in the record no basis for granting him a new trial.

No error.