State v. Howard

———————

STATE OF NORTH CAROLINA v. REBECCA HOWARD

No. 7212SC306

(Filed 28 June 1972)

Criminal Law § 99— questions by trial court — expression of opinion — clarification

Where an eyewitness' only explanation of how the prosecuting witness was injured by a solution of hot water, kitchen lye and Drano was that "the hot water splashed in her face" while she was scuffling with the defendant, the trial court did not express an opinion on the credibility of the witness by asking the witness questions as to how the prosecuting witness received burns on her right side and shoulder if defendant had the hot water solution in her right hand while scuffling with the prosecuting witness, the court's questions being for the purpose of clarifying the witness' testimony.

APPEAL by defendant from *Clark, Judge,* Criminal Session, Superior Court, CUMBERLAND County.

Defendant was tried upon an indictment charging that she wilfully and maliciously threw a corrosive acid and alkali solu-

tion of hot water, kitchen lye and Drano upon the prosecuting witness "with the intent to murder, maim and disfigure and and did inflict serious injury to" the prosecuting witness. The jury found her guilty as charged, and from judgment imposing a prison sentence, defendant appealed.

*Attorney General Morgan, by Associate Attorney Conely, for the State.*

*James Godwin Taylor, Assistant Public Defender, for defendant appellant.*

MORRIS, Judge.

The only assignment of error which appellant brings forward is that by his questioning of one of defendant's witnesses, the judge invaded the province of the prosecution and tended to discredit the witness in the eyes of the jury, thereby committing reversible error.

The evidence for the State tended to show that the prosecuting witness, Elizabeth Averitte, and defendant worked in the kitchen at Tropical Restaurant in Fayetteville. On the morning the injury occurred, the two got into an argument. Defendant went to the sink and put some Drano in a pot of hot water. Defendant threw the solution on Elizabeth's shoulder, chest, and face. Defendant then held her down and cut her on the neck with a cleaver.

Defendant's first witness was Edgar Hossler. He testified with respect to the argument and said that Elizabeth asked defendant to go outside with her to settle the argument, but defendant refused to go. According to his testimony, Elizabeth had a long butcher knife in her right hand and started toward defendant, whereupon defendant reached in the sink and got a container. Elizabeth met her and they "started tangling" and during the "tangle" Elizabeth got cut on the right side of her neck with the knife she held in her right hand, and "the hot water splashed in her face." This was the witness's only explanation of how the injury was received, both during direct and cross-examination. After cross-examination the court asked the following questions:

"Q. Were they scuffling and tied up when she threw the water on her?

A. Yes, sir.

State v. Howard

Q. They were scuffling at that time, face to face with each other?

A. Yes, sir.

Q. And the defendant had the hot water in her right hand?

A. Which one you referring to?

Q. Rebecca had the hot water in her right hand?

A. Yes, sir.

Q. Did you observe Elizabeth after she was hurt? Did you observe the burned area where she was hurt?

A. Yes, sir.

Q. Wasn't most of it on the right hand, on the right side and shoulder?

A. Right.

Q. The right side of her face and shoulder?

A. Yes, sir.

Q. How did Rebecca get the water on the right side? Wasn't her left side to Mrs. Averitte's right? Rebecca had the water in her right hand, wasn't it?

A. She got that on her face during the scuffle.

Q. What?

A. During the scuffle, she got the water dashed on her face during the scuffle.

Q. Do you still work there?

A. Yes, I still do.

Q. Does Rebecca still work there?

A. No, she don't work there.

Q. When did she quit?

A. After this incident happened."

It is this questioning which defendant says constitutes reversible error. We do not agree. The trial judge may examine

witnesses tendered by either side whenever, in his discretion, he sees fit to do so. *State v. Horne,* 171 N.C. 787, 88 S.E. 433 (1916). In this examination he must be careful to avoid prejudice to either party and may not impeach the witness or cast doubt on his credibility. *State v. Peters,* 253 N.C. 331, 116 S.E. 2d 787 (1960). Here, however, the court was seeking clarification. The witness had testified he observed the occurrence, but his only explanation of how the solution got on Elizabeth was that "Elizabeth got . . . the hot water splashed in her face." We think the words of Justice Huskins in *State v. Colson,* 274 N.C. 295, 308, 163 S.E. 2d 376 (1968), cert. denied 393 U.S. 1087, 21 L.Ed. 2d 780, 89 S.Ct. 876 (1969), are appropriate:

> " . . . 'Judges do not preside over the courts as moderators, but as essential and active factors or agencies in the due and orderly administration of justice. It is entirely proper, and sometimes necessary, that they ask questions of a witness so that the "truth, the whole truth, and nothing but the truth" be laid before the jury.' *Eekhout v. Cole,* 135 N.C. 583, 47 S.E. 655. We have examined the questions by the judge to which exception was taken, and in our opinion no prejudice resulted from them. The questions served only to clarify and promote a proper understanding of the testimony of the witnesses and did not amount to an expression of opinion by the judge. *State v. Carter,* 233 N.C. 581, 65 S.E. 2d 9; *State v. Grundler,* 251 N.C. 177, 111 S.E. 2d 1."

No error.

Judges VAUGHN and GRAHAM concur.