STATE OF NORTH CAROLINA v. JOHN EARL BROWN

No. 8218SC175

(Filed 16 November 1982)

1. **Criminal Law § 91— Speedy Trial Act—time between order and mental examination**

   The 42-day period between a commitment order and the transportation of defendant to a hospital for a mental examination was properly excluded by the trial court from the statutory speedy trial period. G.S. 15A-701(b)(1)(a).

2. **Constitutional Law § 31— indigent defendant—denial of statistician at State expense**

   The trial court did not abuse its discretion in the denial of an indigent defendant's request for the appointment of a statistician at State expense to aid him in an attempt to prove that his indictment was not returned by a grand jury representing a fair cross-section of the community. G.S. 7A-454; G.S. 7A-450(b).

**3. Criminal Law § 99.9— examination of witness—no expression of opinion**

The trial judge did not express an opinion on the evidence in asking a State's witness five questions eliciting testimony as to defendant's whereabouts before and on the date of the crimes charged.

**4. Criminal Law § 138— increase in defendant's sentence during term**

The trial court acted properly in increasing defendant's sentence during the term after discovering that the crime for which defendant was convicted was committed prior to a change in a parole law which the court had erroneously taken into consideration when imposing the original sentence where the sentence was changed only after a hearing in open court at which both parties, represented by counsel, were present.

APPEAL by defendant from *Long, Judge.* Judgment entered 3 September 1981 in Superior Court, GUILFORD County. Heard in the Court of Appeals 17 September 1982.

On 10 November 1975 a bill of indictment was returned against defendant charging him with first degree murder of John Albert Hughes and armed robbery of Gary Edward Blackwell, Donnie Morris Vinson and Howard Moore at Blackwell's residence in Greensboro, North Carolina, on 6 January 1974. Defendant was arrested in New York and brought back to North Carolina on 3 October 1980. Defendant remained in the Guilford County Jail from 3 October 1980 until trial, except for the period of time from 12 March 1981 to 13 May 1981 when defendant underwent court-ordered psychiatric evaluation at Central Prison.

At trial, the State presented the testimony of Blackwell, Vinson and Howard who were with Hughes in Blackwell's home at the time of the shooting. Their testimony tended to show that Blackwell, Vinson, Howard and Hughes were smoking marijuana in Blackwell's bedroom, that three men entered the bedroom, one with a shotgun and one with a pistol, and that the three men said this was a stick-up. These witnesses also testified that they and Hughes did not resist, but that the shotgun went off and Hughes fell to the floor. The three men then took the money and marijuana and left the house. Neither Blackwell, Vinson nor Howard testified that they recognized defendant as the person who shot Hughes with the shotgun.

Viola Brown Coleman, defendant's aunt, testified that defendant had been to her house in Greensboro on 6 January 1974 and

that her children frequently saw defendant in Greensboro around the time of the shooting on 6 January 1974.

Wilbur Johnson testified that he, the defendant and another man named Ray Austin were together on 6 January 1974 when they entered Blackwell's house for the purpose of taking any marijuana they could find. He also testified that defendant was carrying a sawed-off shotgun when they entered Blackwell's house, that Johnson heard a gun go off and then ran to the car, and that the defendant followed him to the car and stated that his gun went off.

The State presented the testimony of two Greensboro police officers and of the pathologist who performed the autopsy on Hughes and concluded that he died of a gunshot wound to the neck.

The FBI agent who arrested defendant in New York testified for the State and stated that defendant was living under the assumed name of Douglas Hicks and that the defendant made a statement at the time of his arrest that he was at Blackwell's house on 6 January 1974 but that he was not involved in the shooting or robbery.

Defendant presented the testimony of four persons all of whom were residents of Brooklyn, New York. All four witnesses testified that they knew the defendant well and that they had met him in New York sometime in 1973. All four witnesses testified that they could not remember seeing the defendant on 6 January 1974, but that they had seen him in New York in late December of 1973 and in January of 1974. They testified that he lived in Brooklyn before and after 6 January 1974.

The defendant testified that he had some relatives in Greensboro, that he was using an assumed name because he had violated his probation under a larceny conviction in Ohio and was wanted in Ohio for forgery, that he had gone to New York to live in the spring or summer of 1973, that he could not remember where he was on 6 January 1974, that he had never seen Blackwell, Moore, Vinson, Johnson or Austin before, that he had never been to Blackwell's house, and that he did not go to his aunt's house in Greensboro on 6 January 1974. Defendant also testified that he had been drinking on the morning that the FBI agents ar-

rested him and that he did not make the statement that the FBI claims he made.

The jury found defendant guilty of armed robbery and involuntary manslaughter and defendant appeals from a judgment entered pursuant to that verdict.

*Attorney General Edmisten, by Special Deputy Attorney General Isham B. Hudson, Jr., for the State.*

*E. S. Schlosser, Jr., for defendant-appellant.*

MARTIN (Robert M.), Judge.

[1] Defendant first assigns as error the failure of the trial court to grant his motion to dismiss because of violation of his statutory right to a speedy trial. Specifically, defendant contends that the lower court erred in its refusal to include in the computation made pursuant to G.S. 15A-701(a1)(1) the 42 days between the judge's commitment order on 28 January 1981 and the day defendant was finally sent to Central Prison for his mental examination on 12 March 1981.

The pertinent section of the Speedy Trial Act, N.C. Gen. Stat. 15A-701(a1)(1) provides:

> (a1) Notwithstanding the provisions of subsection (a) the trial of a defendant charged with a criminal offense who is arrested, served with criminal process, waives an indictment or is indicted, on or after October 1, 1978, and before October 1, 1983, shall begin within the time limits specified below:
>
> (1) Within 120 days from the date the defendant is arrested, served with criminal process, waives an indictment, or is indicted, whichever occurs last;

To determine the time elapsed under G.S. 15A-701(a1)(1), the court is instructed under N.C. Gen. Stat. 15A-701(b)(1)(a) that

> (b) The following periods shall be excluded in computing the time within which the trial of a criminal offense must begin:
>
> (1) Any period of delay resulting from other proceedings concerning the defendant including, but not limited to, delays resulting from:

(a) A mental or physical examination of the defendant, *including all time when he is awaiting or undergoing treatment or examination*, or a hearing on his mental or physical capacity; (emphasis added)

We find no merit in defendant's first assignment of error, since the North Carolina Supreme Court has recently recognized that G.S. 15A-701(b)(1)(a) does not restrict the excludable period to the period of time a person is actually in custody of the hospital. *State v. Harren*, 302 N.C. 142, 273 S.E. 2d 694 (1981). The court stated that the reason for excluding the time between the order and transportation of defendant to the hospital was that "the State cannot bring the defendant to trial during this time period because to do so would deprive him of the benefit of the mental examination." *Id.* at 146, 273 S.E. 2d at 697.

Although *Harren* dealt with G.S. 15A-701(b)(1)(a) as amended in 1981, that amendment adding the words "including all time when he is awaiting or undergoing treatment or examination," the Speedy Trial Act is a procedural statute with any amendment thereto being treated as if part of the original statute. *State v. Morehead*, 46 N.C. App. 39, 264 S.E. 2d 400, *cert. den.*, 300 N.C. 201, 269 S.E. 2d 615 (1980). We conclude that the trial court properly excluded the 42 day period between the commitment order and transport to the hospital, with the remaining includable periods of delay being within the time limit set by G.S. 15A-701(a1)(1).

[2] Defendant next contends that the trial court erred by denying him access to a statistician to aid him in an attempt to prove that his indictment was not returned by a grand jury representing a fair cross-section of the community. Under N.C. Gen. Stat. § 7A-454 a trial court has the power to allow a fee for the service of an expert witness who testifies for an indigent defendant. N.C. Gen. Stat. § 7A-450(b) also provides that "it is the responsibility of the State to provide him (an indigent person) with counsel and the other necessary expenses of representation." The question of whether an expert should be appointed at State expense to assist an indigent defendant is within the discretion of the trial judge. *State v. Tatum*, 291 N.C. 73, 229 S.E. 2d 562 (1976).

Defendant's constitutional and statutory right to a State appointed expert arises only upon a showing that there is a reasonable likelihood that such an expert would discover evidence which would materially assist defendant in the preparation of his defense. *State v. Alford,* 298 N.C. 465, 259 S.E. 2d 242 (1979). There is no requirement that an indigent defendant be provided with investigative assistance merely upon the defendant's request. *State v. Parton,* 303 N.C. 55, 277 S.E. 2d 410 (1981). We hold that the trial judge did not abuse his discretion in denying defendant access to a statistician. Newspaper articles merely expressing the opinions of the Governor of North Carolina, the North Carolina Courts Commission, and the North Carolina Human Relations Council failed to show the reasonable likelihood of material assistance which *Alford* requires.

[3] Defendant's next assignment of error suggests that the trial judge unfairly prejudiced defendant's case by asking one of the State's witnesses five questions, which elicited testimony as to the defendant's whereabouts before and on 6 January 1974. It is well established that a trial judge may question witnesses as long as the judge does not violate the prohibition against expressing an opinion as to the weight of the evidence or the credibility of the witness. 1 Brandis on North Carolina Evidence § 37 (1982). "[J]udges should be regarded not merely as referees of prize fights, but rather as responsible participants in the difficult attempt to ascertain the truth (not always faithfully aided by counsel)." *Id.* See also *Eekhout v. Cole,* 135 N.C. 583, 47 S.E. 655 (1904). Not only may the judge question a witness for the purpose of promoting a better understanding of the testimony, *State v. Fuller,* 48 N.C. App. 418, 268 S.E. 2d 879, *review denied* 301 N.C. 403, 273 S.E. 2d 448 (1980), but the judge may also direct questions to the witness in an effort to elicit overlooked pertinent facts. *State v. Monk,* 291 N.C. 37, 229 S.E. 2d 163 (1976).

We find no error in the five questions which the trial judge asked the State's witness. Questions 1, 2, 3, and 5 began with the qualifying language "where do you say," "when you say," and "you say." That language clearly precludes any interpretation of the judge's questions as an expression of his opinion. He was merely attempting to clarify and develop the testimony already presented. Although Question 4 did not begin with the neutral language of the other questions, taken in conjunction with the

other questions it does not constitute an improper expression of opinion by the trial judge. The mere fact that the judge's questions may produce answers which contain new testimony, or cause the witness to repeat testimony already given on direct or cross examination, does not automatically create prejudicial error. Here the judge's questions were both necessary and proper to "insure justice and aid the jury in their search for a verdict that speaks the truth." *State v. Pearce*, 296 N.C. 281, 285, 250 S.E. 2d 640, 644 (1979).

The next assignment of error deals with the trial judge's denial of defendant's motion to set aside the verdict. Defendant's motion to set aside the verdict was addressed to the discretion of the trial court and refusal to grant the motion is not reviewable absent a showing of an abuse of discretion. *State v. McNeil*, 280 N.C. 159, 185 S.E. 2d 156 (1971). We find that the verdict was adequately supported by the evidence and that there was no abuse of discretion.

Furthermore, as to defendant's fifth assignment of error, we are unable to find any fatal error or defect appearing on the face of the record and therefore find no error with the trial judge's refusal to arrest the judgment. *Id.*

[4] Defendant contends that the trial court improperly increased defendant's original sentence, after discovering that the crime defendant was convicted of was committed prior to a change in a parole law which the judge had erroneously taken into consideration when imposing the original sentence. The trial court acted properly in changing the defendant's sentence after discovering it had mistakenly applied the wrong parole law when originally sentencing defendant. Until the end of the term the orders and judgments of the court are *in fieri* and the judge has within his discretion the power to make any changes that he finds appropriate for the administration of justice, and for that purpose he may hear further evidence in open court. *State v. Godwin*, 210 N.C. 447, 187 S.E. 560 (1936). In the present case the defendant's sentence was changed only after a hearing in open court at which both parties, represented by counsel, were present and we find no error.

We have carefully reviewed defendant's final assignment of error and find no merit.

In the trial we find

No error.

Judges ARNOLD and WHICHARD concur.