STATE OF NORTH CAROLINA v. PAMELA M. HORTON

No. 8418SC355

(Filed 19 February 1985)

**1. False Pretense § 3— defendant's driver's license—admissibility for identification**

   In a prosecution of defendant for obtaining property by false pretenses, the trial court did not err in ordering defendant's attorney to give defendant's driver's license to the prosecutor who then gave it to the State's witness, a sales clerk, who identified the license as the one presented to her by defendant at the time of the alleged offense.

2. **False Pretense § 3.1— goods purchased with checks—subsequent false report that checks were stolen—sufficiency of evidence**

   Evidence was sufficient to be submitted to the jury in a prosecution for obtaining property by false pretenses where it tended to show that defendant presented two checks to merchants in exchange for merchandise, and she subsequently falsely reported the checks as having been stolen so that the checks were dishonored and the merchants received no money.

3. **False Pretense § 3; Criminal Law §§ 58, 99.6— handwriting expert—questions by court proper**

   In a prosecution of defendant for obtaining property by false pretenses where the evidence tended to show that defendant presented checks to two merchants in exchange for merchandise and subsequently falsely reported the checks as having been stolen, the trial court did not err in asking defendant's handwriting expert whether both checks were written by the same person.

APPEAL by defendant from *Wood, Judge.* Judgment entered on 30 September 1983, Superior Court, GUILFORD County. Heard in the Court of Appeals on 9 January 1985.

*Attorney General Rufus L. Edmisten by Special Deputy Attorney General John R. B. Matthis and Assistant Attorney General Philip A. Telfer for the State.*

*Assistant Public Defender Frederick G. Lind for defendant appellant.*

COZORT, Judge.

The jury convicted the defendant of two counts of obtaining property by false pretenses. During the cross-examination of a State's witness, the trial court ordered the defendant, over her objection, to give to the witness the defendant's driver's license which was being used to cross-examine the witness about her identification of the defendant. The defendant also objected to the trial court asking the defendant's expert handwriting witness whether he had compared the handwriting on the check mentioned in the first count of the indictment with the handwriting on the check in the second count. The defendant further assigned as error the denial of her motions to dismiss the charges on the basis of insufficiency of the evidence. We find no error.

The State's evidence showed the following:

Karen Young was employed as a sales clerk in the children's department at Belk's in Friendly Shopping Center in Greensboro.

On 5 August 1982 she was working the night shift, from 5:00 p.m. to 9:00 p.m. On that night the defendant came to her department, selected a few items of little boys' clothing, and paid for them with a check to Belk's for $79.82. In the course of accepting the check for payment, Ms. Young placed a check mark beside the defendant's phone number and driver's license number which were printed on the check, underlined her driver's license number, and wrote the defendant's Belk's charge number on the back of the check.

Edna Blackwelder was employed at Ivey's in Greensboro as a saleslady in the boys' department. On 18 August 1982 she was working the 12:40 p.m. to 9:30 p.m. shift. Between 8:00 and 9:00 that evening, the defendant came to her department, selected boys' shirts and pants, and paid for them with a check to Ivey's for $140.88. In the course of accepting the check for payment, Ms. Blackwelder compared the defendant to the picture on her driver's license, checked her driver's license number and phone number on the front of the check, wrote the expiration date of the driver's license on the check, and wrote her Belk's charge number on the back of the check.

Both checks were drawn on the Wachovia Bank in Winston-Salem. Shortly after the two checks were written, the defendant reported to the Wachovia Bank that the two checks were forgeries. The checks were not honored by Wachovia, and Belk's and Ivey's sustained losses of the amounts of the checks.

The defendant's evidence was that she was at the North Carolina Fitness Center in Winston-Salem on 5 August 1982 and 18 August 1982. She testified that she did not go to Greensboro on either night in question, nor did she write either check.

[1] The defendant first contends that the trial court erred by ordering the defendant's attorney to give the defendant's driver's license to the prosecutor who then gave it to State's witness, Ms. Blackwelder, who identified the license as the one presented to her by the defendant at Ivey's on 18 August. The State obtained the license during the defendant's cross-examination of Ms. Blackwelder, who had been recalled to the stand to clarify her testimony about looking at the defendant's driver's license when she took the check from the defendant. On cross-examination, the defendant's attorney, while holding the defendant's driver's license

in his hand, asked Ms. Blackwelder to describe the picture on the license. The State objected, whereupon the trial court excused the jury and conducted a voir dire examination. The trial court admitted the license into evidence and then allowed the State's witness to testify on redirect examination before the jury that the driver's license was the one defendant presented to her on 18 August 1982 with the check.

In her brief the defendant has offered no authority to support her contention that the trial court erred by requiring her to give the State's witness her license. The defendant has also failed to show that if this action was error how it was prejudicial. "A ruling of the trial court on an evidentiary point is presumptively correct, and counsel asserting prejudicial error must demonstrate that the particular ruling was in fact incorrect." *State v. Milby,* 302 N.C. 137, 141, 273 S.E. 2d 716, 719 (1981). Even assuming *arguendo* that the trial court committed error, we hold it did not constitute prejudicial error because the defendant has failed to carry the burden of showing that a different result would have been reached at the trial had the error not been committed. G.S. 15A-1443(a). Even without the use of the license, Ms. Blackwelder made a positive identification of the defendant, which she maintained through a strenuous cross-examination. She testified that she remembered the defendant because the defendant had an Ace bandage on her arm on 18 August 1982. She also testified that she had waited on the defendant several times prior to 18 August. Because the defendant has failed to show that any prejudicial error resulted by the trial court's actions, this assignment of error is overruled.

[2]  The defendant next challenges the sufficiency of the evidence to prove all of the elements of the offense of obtaining property by false pretenses. The defendant argues that there was no evidence presented that a misrepresentation was made to either Belk's or Ivey's. Defendant's argument is without merit. G.S. 14-100 provides that the "false pretense" element may be "of a future fulfillment or event." When a person presents a check to a merchant in exchange for merchandise, he is representing that the amount of money specified on the check will be given to the merchant when that check is presented to the drawer's bank. If the drawer then commits some act in the future, such as falsely reporting that the check was stolen, which causes the check to be

dishonored and the merchant to receive no money for the merchandise, he has made a misrepresentation as contemplated under G.S. 14-100. In this case, there was ample evidence from which the jury could conclude that the defendant falsely reported the checks as having been stolen after having obtained merchandise in exchange for the checks. We hold that the trial court properly denied the defendant's motions to dismiss.

[3] We next consider whether the trial judge erred by asking the defendant's expert handwriting witness whether both checks were written by the same person. The defendant claims that his questions were an improper expression of an opinion by a trial judge. The judge's questions came after the witness had been examined by the defendant's attorney and cross-examined by the State's attorney. On direct examination for the defendant, the expert testified that he had compared the two questioned checks with known handwriting exemplars from the defendant. Neither the defendant nor the State asked the expert witness if he had an opinion as to whether the two checks were written by the same person. After the State completed its cross-examination, the following exchange between the court and the expert witness occurred:

THE COURT: Let me ask you one question. Did you compare State's Exhibit 1 and State's Exhibit 2 for signature—I mean State's Exhibit 3. Did you compare the signature on each of those?

THE WITNESS: Yes, I did to the first submission of known standards only. The second submission of known standards—

THE COURT: Did you compare 1 with 3?

THE WITNESS: Oh, I see. The comparison—

THE COURT: Were they made by the same person or did you form an opinion about that?

THE WITNESS: Yes, that was among the first of the examinations that would be performed. Yes. There is every indication that they would have been made from one origin.

THE COURT: So you were of the opinion that State's 1 and State's 3 were made by the same person?

THE WITNESS: That is correct.

THE COURT: All right, sir.

As the witness stated, comparing the two questioned documents with each other would be "among the first of the examinations that would be performed." The trial judge was merely directing "questions to the witness in an effort to elicit overlooked pertinent facts." *State v. Brown*, 59 N.C. App. 411, 416, 296 S.E. 2d 839, 843 (1982), *cert. denied*, 310 N.C. 155, 311 S.E. 2d 294 (1984). We hold his questions did not constitute an expression of his opinion.

No error.

Judges WEBB and EAGLES concur.