STATE OF NORTH CAROLINA v. GEORGE HAYNES

No. 46

(Filed 6 January 1970)

**1. Criminal Law § 75— admissibility of confession — Miranda warnings — inducement — drugs — sufficiency of findings**

Trial court properly found that defendant's confession was freely, voluntarily, and understandingly made, where officers testified on voir dire that they fully advised defendant of his *Miranda* rights prior to his confession, and where defendant admitted in his testimony that the warnings were given and that he had heard them many times before, but contended that he had been drinking heavily and taking drugs prior to the confession and that the officers had promised to testify for him.

**2. Homicide § 25— felony-murder prosecution — instructions — premeditation and deliberation**

In a homicide prosecution under indictment drawn pursuant to G.S. 15-144, an instruction to the jury that the wilful killing of a human being committed in the perpetration or attempted perpetration of a robbery or other felony is murder in the first degree, irrespective of premeditation, deliberation or malice aforethought, *held* without error.

**3. Homicide § 12— indictment under G.S. 15-144 — sufficiency to sustain verdict — allegations**

An indictment drawn pursuant to G.S. 15-144 is sufficient to sustain a

verdict of murder in the first degree if the jury should find from the evidence, beyond a reasonable doubt, that the killing was done either with malice and premeditation and deliberation or in the perpetration or attempted perpetration of a felony, notwithstanding there was no allegation in the indictment that the killing was done with premeditation and deliberation or in the perpetration or attempted perpetration of a robbery.

**4. Homicide § 12— indictment under G.S. 15-144 — bill of particulars**

If a defendant charged with murder in the first degree by indictment drawn under G.S. 15-144 desires to know whether the State relies on proof the killing was done with premeditation and deliberation or in the perpetration or attempted perpetration of a robbery, he should apply for a bill of particulars as provided in G.S. 15-143.

MOORE, J., did not participate in the decision of this case.

APPEAL by defendant from *Hall, J.,* June, 1969 Criminal Session, ROBESON Superior Court.

This criminal prosecution was founded upon the following bill of indictment:

"The Jurors for the State upon their oath do present, that George Haynes late of Robeson County, on the 18th day of September A.D. 1968, with force and arms, at and in the said County, feloniously, willfully, and of his malice aforethought, did kill and murder one Hunter Locklear contrary to the form and the statute in such case made and provided, and against the peace and dignity of the State."

In summary, the State's evidence disclosed the following: The deceased (Hal) Hunter Locklear, age 32, on and prior to August 23, 1968, lived in Robeson County, North Carolina. On that day, he left home driving his automobile (a red Torino Ford). Twenty-eight days thereafter, his body was found concealed in bushes and weeds near a dirt road in Robeson County. "The pockets of his pants were turned wrongside out" and on the ground around the body were two or three pennies. There was a bullet wound in the head.

James Locklear, a resident of Robeson County, but not related to Hal Hunter Locklear, testified as a witness for the State: On August 23, he and Hal Locklear left Robeson County and drove in Hal's automobile to Texas, where they met the defendant George Haynes, whose home was in Charles County, Maryland. "He said he was on the run." The three left El Paso in the red Torino Ford. Each took turns driving. In Florida, the defendant, the witness and the deceased held up and robbed a filling station. The holdup netted both money and the operator's credit card, which the defendant

kept and used to buy gas and tires on the way North. In Georgia, they stole a license plate which they transferred to the Torino. Dur-their travels, they subsisted on some food and a large quantity of beer.

Just south of Dillon, South Carolina, the defendant began driving. The witness was in the seat beside the driver. The deceased, Hal Hunter Locklear, was in the rear seat asleep. The witness went to sleep. At some time in the night, he was awakened by a loud noise. At the time he became conscious, he saw the defendant just outside the car with a pistol. Hal Hunter Locklear was "slumped over" in the back seat. At the command of the defendant, the witness took the body of the deceased from the back seat and concealed it in some bushes and weeds off the road. The defendant, at the point of the pistol, forced the witness to take the money from the deceased and deliver it to him. The defendant forced the witness to turn over his own money, saying: "Don't run. I have done killed your buddy. Now I am fixing to kill you." The witness begged for his life. "I told him I would help him rob places. He said before he left El Paso he planned to kill me and Hal." The defendant and the witness continued North in the automobile.

The witness drove the car to Emporia, Virginia. Part of the time, the defendant was asleep. At Emporia, they stopped at a filling station for gas. At the station, the witness went into the restroom. "George was in the back seat. When I went to the restroom, I jumped through the window . . . and reported what had taken place to the Emporia police."

Sheriff Garner of Charles County, Maryland testified that in consequence of dispatches he received from the North Carolina and Virginia officers, on the morning of September 19, 1968 he located a 1968 red Torino Ford parked in a lot adjoining a bar and restaurant near LaPlata, Maryland. Sheriff Garner was acquainted with George Haynes, the defendant. "When we found the car, we surrounded the building. Donald Poole and myself went in." Haynes was arrested and handcuffed in the restroom where he was hiding. The officers found the pistol (a revolver) behind the door. It contained one empty shell and three loaded shells. The officers found two Ford keys rolled up in toilet paper in the restroom. These keys fitted the switch and trunk of the red Torino Ford. The defendant's brother was in the restaurant. When the officers brought the defendant from the restroom, George said to his brother, "They have got me for more than jail break."

Sheriff Garner testified that he gave the prisoner all *Miranda*

warnings orally and by reading from a card on which the warnings were typed. The defendant, after being warned of his rights, stated to the Sheriff, "I will tell you everything that I have done except how I got the hacksaw blades and the razor when we broke out of jail. . . ." After the jail break, the defendant went to Florida; then to Texas where he met Hal Hunter Locklear and Jimmy Locklear.

The defendant admitted the robbery of the filling station in Florida, and the use of the victim's credit card to purchase tires and gas. He then signed a written confession which was later offered in evidence. When the defendant's privately employed counsel objected to the confession, Judge Hall conducted a detailed voir dire hearing in the absence of the jury.

Sheriff Garner and Deputy Sheriff Poole of Charles County, Maryland, and Deputy Sheriff Stone of Robeson County, North Carolina, were witnesses to the incriminating statements made by the defendant. They testified at the voir dire hearing. The defendant also testified that he had been drinking heavily and taking drugs and "yellow jackets". He admitted he was advised of his rights; that he had heard them many times before. He testified Deputy Sheriff Poole had agreed to help him and to attend court in North Carolina to testify for him. Deputy Sheriff Stone told him, before he made the statements, that in North Carolina prisoners could be put on work release and could make money while serving time.

At the conclusion of the voir dire hearing, Judge Hall found facts and adjudged the statement made by the defendant to officers Poole and Stone "was freely, voluntarily and understandingly made without promise or threat and that such statement is admissible in evidence." The testimony at the hearing fully warranted the findings of fact and the conclusion of the court that the confession was freely and voluntarily made, without threat or inducement. Here are pertinent parts of the signed statement, which was read before the jury: "On September 18th, traveling up 301, in South Carolina, I was in the rear seat. Jimmy was driving and Hal Locklear was on the front seat in the right side. I heard Hal say to Jimmy that he was going to rob and kill me. Jimmy said, 'Rob him, but don't kill him.' Hal said, 'Yes, I am going to.' The pistol was in the front seat where Hal was sitting then. He said he was going to do that when we got to Lumberton. I lay there fifteen minutes, then raised up and said I would drive. Hal got in the back seat. Jimmy got on the right front. Jimmy told me to stop in Dillon, South Carolina, and he would drive again. * * * When we got to Dillon, they were both asleep and I kept on

going. After leaving Dillon I was driving sixty-five or seventy, drove about thirty minutes before I pulled off I-95, a four lane road, to my left and went a mile and a half to my best knowledge, turned off this road on a dirt road, went about a block and turned right. Then I stopped, got out of the car and took the key. * * * Between Dillon and there I had reached and got the pistol from under the seat and I had it in my hand. When I got out, Jimmy woke up and slipped over under the steering wheel. Hal was still asleep in the rear seat with the right rear window down and his head lying in the window. I walked around the car and stuck the 32 caliber pistol about six to ten inches from his head and shot him. When I shot him, he sort of slumped down. * * * At this time, Jimmy jumped out of the car, came around to the back of the car where I was and started crying and begging me not to shoot him. I told him to get Hal's body out of the car and drag it over in the bushes. He did. I told him to empty Hal's pockets and give me his wallet. He did. Then I took what money Jimmy had and he kept begging me not to shoot him. . . . then I told him I would take him with me. Jimmy got under the steering wheel. We came north on I-95. * * * I drank two or three more beers on the way. I got in the back seat, sat up toward the wheel with the pistol under my leg and went to sleep. The next thing I knew we were stopped at a station. Jimmy said we needed gas. I told the man at the station to fill it up. Jimmy asked me if he could go to the bathroom. I could see the bathroom door, so I told him he could go ahead. * * * After the man filled it up with gas, Jimmy had not come back. I pulled the car over to the bathroom, went in and he was not in there. I came back out, got in the car, drove a while, pulled over and stopped and slept until about 9:00 A.M. I then drove to Maryland, when I was arrested. The time I shot Hal Locklear in my opinion was between 11:00 P.M. Wednesday night, 9-18 and 2:00 A.M. September 19, 1968. The reason I did not shoot Jimmy Locklear, was he took up for me, and also that he was so young. * * * I have had the above statement read to me by Deputy Sheriff Stone and it is true to the best of my knowledge. 5:30 P.M. Witness: Hubert Stone, Donald Poole, Deputy Sheriff, Charles County, Maryland"

When the State rested, the defendant elected not to offer evidence. Following the arguments and charge of the court, the jury found the defendant guilty of murder in the first degree, with a recommendation that his punishment be imprisonment for life in the State's prison.

The court denied defendant's motion to set aside the verdict. From a sentence of life imprisonment, the defendant appealed.

*Robert Morgan, Attorney General; Bernard A. Harrell, Assistant Attorney General; Ralph Moody, Deputy Attorney General, for the State.*

*Everett L. Henry, W. Earl Britt for the defendant.*

HIGGINS, J.

The record discloses the defendant, at the conclusion of his trial, made eleven assignments of error. However, in the brief filed here, his careful and faithful attorneys have discussed only three questions of law which are decisive of this appeal. Only questions 1 and 2 require discussion. The third involves a formal objection — the refusal of the court to set aside the verdict.

[1]  The defendant's counsel place their main reliance for a new trial on the ground of alleged error in admitting in evidence the defendant's confession. At the time the State offered the confession the defendant objected, whereupon Judge Hall, in the absence of the jury, conducted a voir dire examination. The scope of the inquiry was broad and the evidence introduced was in detail. State's witnesses Sheriff Garner, Deputy Sheriff Poole of Charles County, Maryland, and Deputy Sheriff Stone of Robeson County, North Carolina, testified that full and complete warnings of the defendant's rights were given before any questions were asked. The defendant, in his testimony, admitted the warnings were given, but contended that at the time he made the statements, he had been drinking heavily, taking drugs, and did not fully appreciate his situation. He further testified that Deputy Sheriff Poole agreed to go to North Carolina and testify for him; that Deputy Sheriff Stone told him that prisoners in North Carolina were permitted to avail themselves of a work release program and were paid during the time they were serving sentences.

Judge Hall heard the evidence, found the facts, and concluded therefrom the defendant's admissions were freely, voluntarily and understandingly made without any inducement or coercion. The evidence fully supports the findings. In fact, before any questions were asked, and immediately after arrest when the officers emerged from the restroom, and in the presence of the defendant's brother, the defendant said this to him: "This time they have got me for more than jail break." The confession was properly admissible in evidence. *State v. Bishop,* 272 N.C. 283, 158 S.E. 2d 511; *State v. Childs,* 269 N.C. 307, 152 S.E. 2d 453; *State v. Fuqua,* 269 N.C. 223, 152 S.E. 2d 68; *State v. Gray,* 268 N.C. 69, 150 S.E. 2d 1; *State v. Barnes,* 264 N.C. 517, 142 S.E. 2d 344.

[2]    The defendant's second objection to the trial involves the following instruction to the jury: ". . . (I further instruct that it is also murder in the first degree where the killing is done in the commission or the attempted commission of a robbery or other felony. * * * The unlawful and felonious and willful killing of a human being committed in the perpetration or attempt to perpetrate a robbery or other felony is murder in the first degree, irrespective of any premeditation, deliberation or malice aforethought. That is to say, members of the jury, when a murder is committed in the perpetration or attempt to perpetrate the felony of robbery, it is murder in the first degree, irrespective of premeditation, deliberation or malice aforethought.)"

G.S. 14-17 provides: "A murder which shall be perpetrated by means of poison, lying in wait, imprisonment, starving, torture or any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration or attempt to perpetrate any arson, robbery, burglary or other felony shall be deemed to be murder in the first degree."

[3]    Before giving the quoted instruction, Judge Hall charged that the jury, according to its findings from the evidence, might return one of these verdicts: (1) Guilty of murder in the first degree; (2) Guilty of murder in the first degree with recommendation of life imprisonment; (3) Guilty of murder in the second degree; (4) Guilty of manslaughter; or (5) Not guilty. The indictment in this case neither alleged the killing was done after premeditation and deliberation, nor in the perpetration or attempt to perpetrate a robbery. Nevertheless, the bill is sufficient to sustain a verdict of murder in the first degree if the jury should find from the evidence, beyond a reasonable doubt, that the killing was done with malice and after premeditation and deliberation; or in the perpetration or attempt to perpetrate a robbery. The form of the bill and its effect as above set out are justified by G.S. 15-144; *State v. Arnold,* 107 N.C. 861; *State v. Covington,* 117 N.C. 834; *State v. Fogleman,* 204 N.C. 401, 168 S.E. 536; *State v. Linney,* 212 N.C. 739, 194 S.E. 470; *State v. Streeton,* 231 N.C. 301, 56 S.E. 2d 649; *State v. Maynard,* 247 N.C. 462, 101 S.E. 2d 340; *State v. Hill,* decided December 10, 1969.

[4]    If a defendant is charged with murder in the first degree by bill of indictment drawn under G.S. 15-144, and desires to know whether the State relies on proof the killing was done with premeditation and deliberation, or in the perpetration or attempt to perpetrate a robbery, he should apply for a bill of particulars as

provided in G.S. 15-143. *State v. Stephens,* 170 N.C. 745; *State v. Gibbs,* 234 N.C. 259, 66 S.E. 2d 883.

Careful review fails to disclose any error of law in the trial.

No error.

MOORE, J. did not participate in the decision of this case.