STATE OF NORTH CAROLINA v. ROZELL OXENDINE HUNT

No. 44

(Filed 17 May 1979)

### 1. Homicide § 20— murder by poisoning—bottles of rat poison—admissibility

In a prosecution for first degree murder where defendant allegedly poisoned her husband, bottles of rat poison purchased by the sheriff from a drugstore approximately nine months after commission of the crime charged were properly admitted into evidence, since the bottles looked the same as bottles allegedly purchased by defendant just prior to the crime; the drugstore in question had continuously carried Singletary's Rat Treatment since 1954; the size bottle purchased by the sheriff was available throughout the year in which the murder occurred; bottles bought at the time the sheriff made his purchase were kept in the same area of the store during the time defendant bought her bottle of poison, and the bottles bought by the sheriff were therefore admissible to show that Singletary's Rat Treatment was available at the drugstore on the day the witness testified she saw defendant purchase a bottle of liquid rat poison.

### 2. Homicide § 15.4— expert opinion evidence—basis of opinion

There was no merit to defendant's contention that the trial court erred in permitting an expert in toxicology to testify concerning the contents of two bottles, which the State had introduced into evidence, without requiring the expert first to relate the basis of his opinion, since the opinion was based on facts within the expert's knowledge, and defendant was free on cross-examination to test fully the accuracy and validity of the tests which formed the basis of the witness's opinion.

### 3. Criminal Law § 99.2— questions by court—no expression of opinion

The trial judge did not, by asking certain questions, impermissibly comment on the evidence, since the trial court sought by his questioning to insure that the witnesses understood what was being asked or sought affirmation and clarification by the witness of the witness's answer.

### 4. Homicide § 15.4— expert opinion evidence—liver sample—identification adequate

In a prosecution for first degree murder where defendant allegedly poisoned her victim, there was no merit to defendant's contention that experts' testimony as to cause of death and as to the level of arsenic found in tissue analyzed by one expert should have been excluded because the State did not sufficiently trace and identify the tissue sample, where the evidence tended to show that the body of the victim was exhumed in the presence of an SBI agent who accompanied the casket to the office of the Chief Medical Examiner in Chapel Hill where the casket was opened by one expert who commenced an autopsy; the expert removed a piece of liver tissue and gave it to a morgue supervisor with instructions to take it to the second expert in a laboratory downstairs in the same building; and the second expert received the sample from the morgue supervisor.

**5. Homicide § 23— first degree murder—jury instructions**

   In a prosecution for first degree murder, the trial court did not err in his jury instructions in (1) devoting more time to recapitulation of the State's evidence than defendant's evidence, since the evidence of the State was lengthier and more detailed; (2) stating to the jury that defendant contended certain things, though she did not take the stand, since the judge was referring to favorable evidence elicited by defendant; and (3) stating that defendant testified to a certain matter, since that constituted a slip of the tongue which defendant should have called to the court's attention if she wanted it corrected.

DEFENDANT appeals from judgment of *McConnell, J.,* 5 September 1978 Criminal Session, ANSON Superior Court.

Defendant was tried upon a bill of indictment, proper in form, charging her with the first degree murder of Joseph Hunt on 1 September 1973.

The State offered evidence tending to show that on 31 August 1973 Brenda Horne was living with defendant Rozell Hunt, Joe Hunt, and their children in Lilesville. On that morning Brenda Horne accompanied Rozell and Joe Hunt to Wadesboro. After Rozell and Joe Hunt had finished some business at the courthouse, they went to the Hi-Lo store where Joe started ordering groceries. While Joe was at the Hi-Lo store Brenda Horne accompanied defendant to a nearby drugstore where defendant purchased some liquid rat poison. Defendant told Brenda Horne the poison was to be used to kill rats. They all went back home about noontime.

After they got home defendant began to prepare lunch while Joe went to the garden. Since Joe was a diabetic his tea had to be prepared differently. His tea was customarily prepared in a jug that had a dent in the side. While defendant was preparing the tea Brenda Horne looked through two holes in the kitchen door and saw defendant pour rat poison into the tea prepared for Joe Hunt. During lunch Joe Hunt drank some of the poisoned tea. He took a nap after lunch, but woke up "weak eyed and throwing up." He threw up a white looking liquid.

Joe Hunt got progressively sicker and was eventually taken to a hospital in Wadesboro, then transferred to a hospital in Charlotte where he died. Brenda Horne stated that defendant had told her on many occasions prior to Joe Hunt's death that she had

tried to poison Joe Hunt, but that he always seemed to survive. Brenda Horne identified the rat poison which defendant had bought as being like Singletary's Rat Treatment.

Sheriff Jarman testified that on 14 May 1974 Brenda Horne accompanied him to the drugstore where on 31 August 1973 she had observed defendant purchase liquid rat poison. After entering the drugstore, Brenda Horne pointed out some boxes underneath the counter where she had seen the proprietor reach for the rat poison allegedly ordered by defendant. The proprietor then reached into those boxes and took out two bottles of Singletary's Rat Treatment. Brenda Horne stated to Sheriff Jarman that this was the same type of rat poison defendant bought and carried home with her on 31 August 1973. These bottles were purchased by Sheriff Jarman. Sheriff Jarman identified State's Exhibits 2 and 3 as the same bottles he had purchased on 14 May 1974. Brenda Horne testified that State's Exhibits 2 and 3 looked the same as the bottle of rat poison bought by defendant in 1973.

Mr. Charles Kiser, proprietor of the drugstore, testified that he was selling a brand of rat poison known as Singletary Single Treatment during August and September of 1973; that the bottles of Singletary's purchased by the sheriff in 1974 were the same type he stocked during 1973: "It was the same size bottle. It would have been the same appearance." Mr. Kiser added that he had been selling the Singletary brand continously since he opened the drugstore in 1954.

Robert Lindsey testified that prior to Joe Hunt's death he had heard defendant say she had tried to poison Joe Hunt unsuccessfully.

Pursuant to a court order Joe Hunt's body was exhumed on 17 April 1974 and transported to Chapel Hill where Dr. Page Hudson, the Chief Medical Examiner, conducted an autopsy. Dr. Hudson removed some liver tissue from the body for further analysis by Dr. Arthur McBay, Chief Toxicologist in the Medical Examiner's office. Dr. McBay testified that Joe Hunt's liver tissue contained a fatal amount of arsenic and that Singletary's Rat Treatment contained lethal amounts of arsenic. Dr. Hudson testified that in his opinion Joe Hunt's death was caused by arsenic poisoning.

Defendant offered evidence tending to show that defendant nursed Joe Hunt during his illness; that she told her daugther and Brenda Horne to summon the rescue squad; that she had been upset by Joe Hunt's death; that there had been no animosity between defendant and Joe Hunt; that the area of the kitchen where defendant allegedly put poison in Joe Hunt's tea could not be seen from the two holes in the closed kitchen door; and that Brenda Horne never made any statements as to the cause of Joe Hunt's sickness.

The jury found defendant guilty as charged, and she was sentenced to life imprisonment. She appeals as of right to this Court.

*Rufus L. Edmisten, Attorney General, by Joan H. Byers, Assistant Attorney General, for the State.*

*Henry T. Drake, attorney for defendant appellant.*

HUSKINS, Justice.

[1] Defendant contends the trial judge erroneously admitted into evidence State's Exhibits 2 and 3. These exhibits were bottles of Singletary Rat Treatment, a rat poison, bought on 14 May 1974 by Edward Jarman, then Sheriff of Anson County, from the same drugstore where on 31 August 1973 defendant had allegedly bought the same type of rat poison. Defendant argues these exhibits were irrelevant and immaterial.

It is well established that "in a criminal case every circumstance calculated to throw any light on the supposed crime is admissible and permissible. *State v. Hamilton,* 264 N.C. 267, 141 S.E. 2d 506; *State v. Knight,* 261 N.C. 17, 134 S.E. 2d 101; *State v. Ham,* 224 N.C. 128, 29 S.E. 2d 449. It is not required that evidence bear directly on the question in issue, and evidence is competent and relevant if it . . . reasonably allows the jury to draw an inference as to a disputed fact." *State v. Arnold,* 284 N.C. 41, 199 S.E. 2d 423 (1973). "Whether the existence of a particular state of affairs at one time is admissible as evidence of the same state of affairs at another time, depends altogether upon the nature of the subject matter, the length of time intervening, and the extent of the showing, if any, on the question of whether or not the condition has changed in the meantime." 1 Stansbury, N. C. Evidence, § 90, p. 283 (Brandis Rev. 1973). Here, the evidence showed that

the bottles purchased by Sheriff Jarman in 1974 looked the same as the bottles allegedly purchased by defendant in 1973; that the drugstore in question had continuously carried Singletary's Rat Treatment since 1954; that the size bottle purchased by Sheriff Jarman in 1974 was available throughout 1973; and that the bottles bought in May, 1974 were kept in the same area of the drugstore during August and September of 1973. Accordingly, State's Exhibits 2 and 3 were admissible to show that Singletary's Rat Treatment was available at the drugstore on the day Brenda Horne testified she saw defendant purchase a bottle of liquid rat poison. Proof of this circumstance tends to bolster the State's contention that defendant purchased a bottle of liquid rat poison at Wade's Drugstore on 31 August 1973. Defendant's first and fifth assignments of error are therefore overruled.

[2]   Defendant next contends the trial judge improperly allowed Dr. Arthur McBay to testify as to the contents of State's Exhibits 2 and 3 without requiring him first to relate the basis of his opinion. This contention is without merit. When an expert's opinion is based on facts within the expert's own knowledge he may relate those facts himself and then give his opinion; "or, within the discretion of the trial judge, he may give his opinion first and leave the facts to be brought out on cross-examination. . . ." 1 Stansbury, supra, § 136, p. 446; *State v. Abernathy*, 295 N.C. 147, 244 S.E. 2d 373 (1978); *State v. Hightower*, 187 N.C. 300, 121 S.E. 616 (1924).

Dr. McBay was qualified as an expert in toxicology and testified that he had previously tested bottles of Singletary's Rat Treatment identical to State's Exhibits 2 and 3. Dr. McBay then testified that Singletary's Rat Treatment when ingested contained sufficient arsenic to kill a person. It follows that the trial judge acted within his discretion in permitting Dr. McBay to give his opinion as to the contents of State's Exhibits 2 and 3 without requiring him to give also the basis thereof. Defendant was free on cross-examination to test fully the accuracy and validity of the tests which formed the basis of Dr. McBay's opinion. Defendant's eighth assignment is overruled.

Defendant contends the trial court abused its discretion by allowing the District Attorney to. ask. leading questions throughout the course of the trial. A leading question is one that

suggests the desired answer. Frequently, questions that may be answered "yes" or "no" are regarded as leading. Even so, the trial court has discretionary authority to permit leading questions in proper instances, and absent a showing of prejudice the discretionary rulings of the court will not be disturbed. If the testimony is competent and there is no abuse of discretion, defendant's exceptions thereto will not be sustained. *State v. Young*, 291 N.C. 562, 231 S.E. 2d 577 (1977); *State v. Smith*, 291 N.C. 505, 231 S.E. 2d 663 (1977), and cases cited therein. *See generally*, 1 Stansbury, *supra*, § 31.

We have carefully examined defendant's exceptions and find no abuse of discretion. Eleven of the questions excepted to (Exceptions 5, 6, 7, 10, 15, 16, 22, 25, 34, 36, 37) are not leading; one (Exception 4) is not a question; two (Exceptions 30, 32) are phrased in a mode best calculated to elicit the truth; two (Exceptions 2 and 3) direct attention to the subject matter at hand without suggesting an answer; and three (Exceptions 12, 13, and 14) elicit preliminary or introductory testimony. *See generally, State v. Greene*, 285 N.C. 482, 206 S.E. 2d 229 (1974). In any event, we cannot say from an examination of this record that the trial judge abused his discretion or deprived defendant of a fair trial by the rulings here challenged. Defendant's second assignment of error is overruled.

[3] Defendant next contends that, by asking certain questions, the trial judge impermissibly commented on the evidence. It is proper for a trial judge to direct questions to a witness which are designed to clarify or promote a better understanding of the testimony being given. As stated in *Eekhout v. Cole*, 135 N.C. 583, 47 S.E. 655 (1904): "[J]udges do not preside over the courts as moderators, but as essential and active factors or agencies in the due and orderly administration of justice. It is entirely proper, and sometimes necessary, that they ask questions of a witness so that the 'truth, the whole truth, and nothing but the truth' be laid before the jury." *Accord, State v. Colson*, 274 N.C. 295, 163 S.E. 2d 376 (1968), *cert. denied*, 393 U.S. 1087 (1969). The trial judge must take care, however, that his questioning does not amount to an expression of opinion as to guilt or innocence of a criminal defendant, credibility of a witness, or any other matter which lies in the province of the jury. *See State v. Hudson*, 295 N.C. 427, 245 S.E. 2d 686 (1978), and cases cited therein. The trial judge commits

prejudicial error if at any stage of the trial his questioning by its tenor, frequency, or persistence tends to convey to .the jury the impression of judicial leaning. *State v. Freeman,* 280 N.C. 622, 187 S.E. 2d 59 (1972); *State v. Colson, supra.*

Due consideration of the questions here challenged leads us to conclude that the trial judge at all times acted within the bounds of his discretion. By his questioning the trial court sought to insure that the witnesses understood what was being asked, or sought affirmation and clarification by the witness of the witness' answer. We find nothing in any of the challenged questions which a juror could reasonably interpret as the court's opinion on any matter before the jury. Rather, the questions posed served only to clarify and promote a proper understanding of the testimony. Defendant's fourth, sixth, and tenth assignments of error are overruled.

[4] Defendant contends the trial court erred in allowing Dr. Page Hudson and Dr. Arthur McBay to testify to the cause of death of Joe Hunt and to the level of arsenic found in tissue analyzed by Dr. McBay. Defendant does not challenge the qualifications of the experts or the efficacy of the tests they performed. Rather, she contends the State did not sufficiently trace and identify the tissue sample that was analyzed by Dr. McBay. *See e.g., State v. Britt,* 291 N.C. 528, 231 S.E. 2d 644 (1977); *State v. Webb,* 265 N.C. 546, 144 S.E. 2d 619 (1965); *Robinson v. Insurance Co.,* 255 N.C. 669, 122 S.E. 2d 801 (1961). This contention is without merit. The State's evidence tends to show that Joe Hunt's casket was exhumed on 17 April 1974 by Archie Watson, the funeral director who buried Joe Hunt, in the presence of SBI Agent Hawley. On that day Agent Hawley accompanied the casket to the Office of the Chief Medical Examiner in Chapel Hill where the casket was opened by Dr. Page Hudson who commenced an autopsy. During the course of the autopsy a piece of embalmed liver tissue was removed from the body. Dr. Hudson gave the tissue sample to Ron Boone, morgue supervisor, with instructions to deliver the tissue sample to Dr. McBay who was in the laboratory downstairs. On 17 April 1974 Dr. McBay received the embalmed liver tissue from Mr. Boone. Thus, the State's evidence is sufficient to establish that the tissue removed by Dr. Hudson and analyzed by Dr. McBay came from the liver of Joe Hunt. Accordingly, it was permissible for Dr. McBay to testify as to the

arsenic content of the liver as revealed by his tests and for Dr. Hudson to testify as to cause of death based, in part, on Dr. McBay's findings. Defendant's seventh, ninth, and eleventh assignments of error are overruled.

[5] Defendant presents several assignments relating to the judge's charge to the jury. She first contends that in recapitulating the evidence and the contentions of the parties, the trial judge gave more stress to the evidence presented by the State. *See generally, State v. Hewett,* 295 N.C. 640, 247 S.E. 2d 886 (1978). This contention is unsound. Careful review of the charge indicates that the trial judge fairly and accurately summarized the evidence and contentions of both parties. The eivdence presented by the State was lengthier and more detailed than that presented by defendant. It was therefore natural and reasonable that review of the State's evidence and contentions should take somewhat longer. *See State v. Pearce,* 296 N.C. 281, 250 S.E. 2d 640 (1979); *State v. Sparrow,* 244 N.C. 81, 92 S.E. 2d 448 (1956).

Defendant claims the trial judge committed error in stating to the jury that defendant "contended" certain things when in fact defendant did not take the stand. In context, it is clear the trial judge was properly referring to favorable evidence elicited by defendant on direct examination of her witnesses and cross-examination of State's witnesses. *See State v. Warren,* 292 N.C. 235, 232 S.E. 2d 419 (1977).

Defendant alleges that the trial judge, in his recapitulation of the evidence, misstated several facts. She asserts the trial court charged that "Rozell Hunt testifed she had tried to poison Joe Hunt before, and that the Lord had saved him or that he had been saved and she did not succeed." Defendant points out that Rozell Hunt did not *testify* at all and further that defense witness Sara Horne never testified to such fact.

In reviewing this contention, we first note that defendant has taken the quoted sentence out of context. The quotation is part of a sentence in which the trial judge was attempting to restate the testimony of Sara Horne. When the sentence is considered in the context in which it was used, the judge is saying that Sara Horne had testified about a conversation between Brenda Horne and her mother, *i.e.,* that her mother Rozell Hunt said she had tried to

poison Joe Hunt before and that the Lord had saved him or that he had been saved and she did not succeed. Thus, in attempting to summarize the testimony of Sara Horne, the trial judge mistakenly attributed to Sara the earlier testimony by Brenda Horne regarding inculpatory statements made to Brenda by Rozell Hunt. In this context, the trial judge's use of the phrase "Rozell Hunt *testified*" (emphasis ours) constitutes an inadvertent slip of the tongue which should have been brought to the court's attention. Defendant, however, did not bring this inaccuracy in the recapitulation of the evidence to the attention of the trial judge so as to afford opportunity for correction; hence, it cannot now be assigned as prejudicial error. *See State v. Hewett, supra; State v. Dietz*, 289 N.C. 488, 223 S.E. 2d 357 (1976). Nonetheless, we note the trial judge instructed the jury that his recapitulation of the testimony did not constitute evidence and that if its recollection of the evidence differed from his, the jury's recollection should control. Thus, assuming the slight inaccuracies in the judge's charge were subject to appellate review, it is clear they did not constitute prejudicial error.

Defendant contends the trial judge did not properly explain the concept of reasonable doubt to the jury. This assignment is overruled. The instruction on reasonable doubt given by the trial judge is virtually identical to the instruction approved by this Court in *State v. Wells*, 290 N.C. 485, 226 S.E. 2d 325 (1976).

We have carefully reviewed the remaining objections to the charge and find them to be without merit. Further discussion will serve no useful purpose. In summary, the court's charge correctly states the law and applies it to the varying aspects of the evidence in a manner calculated to assist the jury in understanding the case and in reaching a correct verdict. Assignments of error 12, 13, 14, 15, 16 and 18 are therefore overruled.

Another assignment relating to the charge—No. 17—is not presented and discussed in defendant's brief. It is therefore deemed abandoned under Rule 28, Rules of Appellate Procedure.

No prejudicial error having been shown in defendant's trial, the judgment of the trial court must be upheld.

No error.