STATE OF NORTH CAROLINA v. CHARLES NORWOOD

No. 27

(Filed 8 July 1981)

**1. Searches and Seizures § 28 — incorrect date on affidavit and warrant — correction by magistrate**

A search of defendant's premises was not illegal because the affidavit and warrant had the date of 11 December typed on them and the search was con-

State v. Norwood

ducted on 10 December where the date had been changed on both documents to 10 December and the date changes were initialed by the magistrate who issued the warrant, since the error was clearly a clerical one on the part of the magistrate and was subsequently corrected.

2. **Criminal Law §§ 42.4, 42.5; Homicide § 15— article seized from defendant— failure to connect to crime—admission as harmless error**

In a prosecution for murder, kidnapping and malicious burning, defendant was not prejudiced by error, if any, in the admission of seized handcuffs, hand-cuff keys and firearms because no connection was shown between the items seized and the crimes charged in that the keys had not been tried to discover if they fit handcuffs on the victim and ballistics tests performed on the seized firearms and bullets removed from the victim's body were inconclusive where the items themselves were not introduced into evidence and there was no description of them contained in the record, and where the State presented overwhelming eyewitness testimony that defendant was guilty of the crimes charged.

3. **Homicide § 25— first degree murder—submission of theories of felony murder and premeditation and deliberation**

In this prosecution for first degree murder, the State was not required to elect between the theories of felony murder and premeditation and delibera-tion, and the trial court properly submitted both theories to the jury where the evidence presented by the State was sufficient to prove the charge of first degree murder under either theory.

4. **Homicide § 31.1— first degree murder—guilty verdict upon theories of felony murder and premeditation and deliberation—punishment for underlying felonies**

Where the jury found defendant guilty of first degree murder on theories of felony murder and premeditation and deliberation, the trial court could disregard the felony murder basis of the verdict and impose additional punish-ment upon defendant for the underlying felonies.

5. **Criminal Law § 34.7— evidence of prior criminal conduct—admissibility to show motive**

In a prosecution for kidnapping and murder, evidence of a transaction in which deceased was supposed to sell marijuana for defendant and deliver the proceeds to defendant but instead sold the marijuana and kept the proceeds was competent to show defendant's motive for killing deceased even though it tended to show prior criminal conduct by defendant.

6. **Criminal Law § 99.9— questioning of witness by court—no expression of opinion**

In this prosecution for kidnapping and murder, the trial court's question to a witness as to whether the witness had seen any money change hands when defendant gave marijuana to deceased merely clarified the answers of the witness and did not constitute an expression of opinion in violation of G.S. 15A-1222.

**7. Criminal Law § 128.2— improper testimony—denial of mistrial**

The trial court in a prosecution for murder, kidnapping and malicious burning did not err in refusing to order a mistrial when a witness testified in response to a question by the prosecutor that he had worked his magic on the prosecutor and caused him to lose a prior case against defendant where the trial court instructed the jury to disregard both the question and answer.

**8. Criminal Law § 89.2— corroborative testimony not inadmissible hearsay**

An officer's testimony admitted for corroborative purposes was not inadmissible hearsay because the corroborated witness had not testified that he made any statement to the officer and defendant had no opportunity to cross-examine the witness with regard to the statement attributed to him since the officer testified that the witness made the statement to him and defendant had the right to recall the witness if he desired to cross-examine him.

ON appeal from judgments of *Rousseau, Judge*, entered 21 April 1980 in Superior Court, MECKLENBURG County.

Defendant was tried on bills of indictment, proper in form, for murder, kidnapping and damage to personal property of another by use of explosive and incendiary material while the property was occupied by another. He was convicted of the murder and kidnapping charges and was sentenced to life imprisonment for each conviction. He also was convicted of damage to personal property of another by use of explosive and incendiary material and received a sentence of thirty years imprisonment to begin at the expiration of the murder sentence. The life sentences imposed in the murder and kidnapping convictions were appealed to this Court as a matter of right. We allowed defendant's motion to bypass the Court of Appeals in the case for damage to property on 5 January 1981.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Roy A. Giles, Jr., for the State.*

*Assistant Public Defenders Cherie Cox and Grant Smithson for the defendant.*

CARLTON, Justice.

I.

Evidence for the State tended to show that the decedent, Ethell "Slim" Wilson, left his sister's house in Salisbury on 13 July 1979 at approximately nine a.m. driving a green Cadillac

automobile. Sometime before noon on that date Wilson, accompanied by defendant, drove the Cadillac into the driveway of James Pearson at 217 Oregon Street in Charlotte. Defendant was holding a pistol to Wilson's temple. Defendant placed handcuffs on Wilson and took him out of the car. Others, including co-defendant Jerry Lee Easter, Joe Chisholm, Tyree Froneberger, Sterling Easter and Larry Adams, were in the immediate area. Defendant unlocked the trunk of the Cadillac and placed Wilson in it. Defendant had a gun in his hand throughout this time. Defendant and Jerry Easter then got into the front seat of the Cadillac and, with defendant at the wheel, they drove off.

Larry Adams and Joe Chisholm followed the Cadillac in a Vega. The Cadillac eventually stopped in a wooded area. Defendant got out, removed the license tag from the Cadillac and threw it into some bushes. Defendant gave Chisholm a gun. Defendant opened the trunk and talked to Wilson. Defendant pulled his gun and asked if everyone was ready. Defendant and Chisholm commenced shooting. After they stopped, defendant said, "He's not dead." Defendant took the gun from Jerry Easter and shot Wilson several more times. Defendant then closed the trunk and Adams, Chisholm, Jerry Easter and defendant left in the Vega.

Over a month later, on 19 August 1979, defendant hired Terry Allen Black to destroy the Cadillac. In return for destroying the car Black was to receive an advance of an ounce of cocaine and, upon successful completion, $500 and a bonus. Two days later, on 21 August 1979, Black met defendant at Fred Williams' home and received the cocaine. He, defendant and Williams then left Williams' home and drove to the wooded area where the Cadillac was parked. Black and defendant prepared the incendiary devices and set the Cadillac on fire. The three men left the scene and went to a home in Tega Cay, where Black was paid $500 and was given a stereo receiver as a bonus.

A volunteer fireman testified that the Cadillac was burning when he arrived at the scene on 21 August. The trunk was pried open and a body found in a small amount of fire. The body was decomposed and the hands were handcuffed. The body was taken to the county morgue, where Hobart Wood, the Mecklenburg County medical examiner, performed an autopsy. Three bullets were recovered from the body. In Dr. Wood's opinion, decedent

State v. Norwood

died of multiple gunshot wounds, had been dead a number of weeks prior to 21 August and died shortly after receiving the gunshot wounds.

The parties stipulated that the body found in the green Cadillac in the wooded area in question on 21 August 1979 was that of decedent, Ethell Wilson.

Defendant affirmed in open court that he did not wish to testify and offered no evidence. He was tried, convicted and sentenced as set forth above.

Further facts pertinent to our decision are set out below.

II.

[1] Defendant contends that the search of his premises shortly after his arrest was illegal and that the items seized as a result of the search should have been suppressed. He contends that the record shows that the affidavit supporting probable cause for issuance of the search warrant was sworn to before the magistrate on 11 December 1979 while the search occurred on 10 December 1979. This argument is without merit. The record clearly discloses that the trial court, during argument on the motion to suppress, examined the originals of the warrant and affidavit. While both documents had the date of 11 December 1979 typed on them, the date had been changed on both documents to 10 December 1979 and the date changes were initialed by the magistrate who issued the warrant. The error was clearly a clerical one on the part of the magistrate and was subsequently corrected. The trial court thoroughly reviewed this matter before allowing the testimony in question, and the admission of testimony concerning the items seized was not error. This assignment is without merit.

[2] In a related argument defendant contends that the trial court erred in submitting testimony concerning items seized from the defendant's residence. Defendant argues that no connection was shown between the items seized and the crimes with which he was charged and, therefore, the testimony concerning such items was irrelevant. He also argues that the testimony concerning those items was inflammatory and prejudicial. The items in question included handcuffs, handcuff keys and "numerous guns on the premises, handgun and also rifle."

Defendant argues that because no link was established between the items seized and the actual instruments used to commit the crimes charged, testimony concerning the seized items should have been excluded. In presenting this argument defendant strongly relies on the Court of Appeals' decision in *State v. Milby*, 47 N.C. App. 669, 267 S.E. 2d 594 (1980). In *Milby*, guns which were seized from the defendants on arrest were admitted into evidence absent any testimony that either gun matched the description of the gun used in the crime charged and absent testimony which would otherwise connect the guns with the crime. The court held that, under these circumstances, the guns were inadmissible. On discretionary review, however, this Court reversed, reasoning thusly:

> First, on the basis of the record which is before us, we are unable to conclude that the admission of the exhibits by the trial court was in fact error. The exhibits in question have not been placed before this Court for its examination. Nor has there been any stipulation placed in the record which would serve to describe the exhibits for us. In other words, we are unable to determine that there was indeed a discrepancy between the weapons which were used in the commission of the armed robbery and the exhibits about which defendants now complain.
>
> A ruling of the trial court on an evidentiary point is presumptively correct, and counsel asserting prejudicial error must demonstrate that the particular ruling was in fact incorrect.

302 N.C. 137, 141, 273 S.E. 2d 716, 719 (1981). Additionally, we held that, assuming the admission of the guns was error, the defendants had not met their burden of showing the error to be prejudicial because overwhelming evidence of their guilt was presented by the State: "In view of the overwhelming evidence which was presented by the state, as well as the quality of the evidence, we conclude that there is no reasonable possibility that the verdicts returned by the jury were affected by the introduction of the handguns in question." *Id.* at 142, 273 S.E. 2d at 720.

In the case at hand, the items complained of were not themselves introduced into evidence nor is any description of them contained in the record. But on cross-examination defendant

brought out that the seized handcuff keys had not been tried to discover if they fit the handcuffs on the victim and that the ballistics tests performed on the seized firearms and the bullets removed from the victim's body were inconclusive. This, however, is not determinative. Here, as in *Milby*, even if the admission of testimony concerning these items was error, defendant has not met his burden of showing that "there is a reasonable possibility that the evidence complained of contributed to the conviction." The State presented the testimony of three eyewitnesses to the kidnapping. Each witness was personally acquainted with defendant and each one's identification is unchallenged. These witnesses saw defendant place the handcuffs on the victim, saw defendant holding a gun, saw defendant lock the victim in the trunk of the Cadillac, and saw defendant drive the Cadillac away. Additionally, the State presented overwhelming evidence, through the testimony of an eyewitness, that defendant shot and killed the victim. Although the items seized were not probative of the charge of malicious burning, the evidence that defendant was the perpetrator of that crime was also overwhelming. Under these circumstances, defendant has not shown that the error, if any, was prejudicial.

[3] Defendant next contends that the trial court erred in submitting the murder charge to the jury under the theories both of felony murder and premeditation and deliberation. He argues that the two theories are inconsistent and that an election must be made between the two. The jury found defendant guilty of first degree murder under both theories, and defendant contends that the verdicts are invalid. He also contends that, therefore, he was improperly sentenced and his judgment and commitments are invalid.

Defendant's indictment for murder tracked the language of G.S. 15-144 and charged the following: "That Charles Norwood . . . with force and arms . . . , wilfully, and of his malice aforethought, did kill and murder Ethell Lewis Wilson . . . ." This indictment allows the State to prove both premeditated murder and felony murder. *State v. Haynes*, 276 N.C. 150, 171 S.E. 2d 435 (1970); *see State v. Swift*, 290 N.C. 383, 226 S.E. 2d 652 (1976); *State v. Lee*, 277 N.C. 205, 176 S.E. 2d 765 (1970). To prove premeditated murder, the State must show that the killing was done with malice and after premeditation and deliberation; to con-

vict of first degree murder under the felony murder rule, the State need show only that the killing was done in the perpetration or attempt to perpetrate a felony. *E.g., State v. Haynes,* 276 N.C. 150, 171 S.E. 2d 435. A murder may be committed after premeditation and deliberation *and* during the perpetration or attempt to perpetrate a felony. The theories involve different elements, but in no way are they inconsistent. The evidence presented by the State was sufficient to prove the charge of first degree murder under either theory. Submission of both theories was proper and the verdicts returned by the jury are valid. *State v. Goodman,* 298 N.C. 1, 257 S.E. 2d 569 (1979).

[4] There was likewise no error with respect to defendant's sentencing. There was clearly sufficient evidence to submit the issue of defendant's guilt or innocence to the kidnapping and malicious damage to personal property charges. As Justice Britt, writing for the Court, stated in *State v. Goodman*:

> If defendant were found guilty of first-degree murder solely by virtue of the felony-murder rule, the court would be precluded from imposing upon him additional punishment for the underlying felony; if defendant were found guilty of first-degree murder pursuant to premeditation and deliberation, and if the jury also found him guilty on one or more other felony charges, the court would not be so precluded.

298 N.C. 1, 15, 257 S.E. 2d 569, 580 (1979).

Here, the trial court clearly instructed the jury that there was only one murder charge, but two theories. The jury was instructed that it could find defendant guilty under either or both theories and that if the jury found that the State had proven defendant's guilt under both theories then they should place the appropriate checkmark by each theory on the written verdict sheet. The jury found the defendant guilty of first degree murder on both theories and so indicated on the verdict sheet provided to them. Since conviction of the defendant for first degree murder was based upon proof of premeditation and deliberation, proof of the underlying felony was not an essential element of the State's homicide case and the trial court properly sentenced defendant both upon the murder conviction and the felony conviction. *Id.*

[5] Defendant next contends that the trial court erred in allowing the State to ask the witness James Pearson certain questions

State v. Norwood

relating to a transaction in Washington, D.C., between defendant and the deceased. Defendant contends that evidence of this transaction was improper and prejudicial because it allowed the State to introduce evidence of prior criminal conduct even though his credibility and character had not been placed in issue. Defendant contends that no link was established between the out-of-state transaction and the crimes with which he was charged.

We find no error in the admission of this testimony. The exchange between the assistant district attorney and the witness clearly establishes that the State's purpose for introduction of this evidence was to establish defendant's motive for killing the deceased. The witness testified that in the winter of 1978 defendant turned over to the deceased some marijuana which the deceased was to sell in Washington, D.C. The deceased was supposed to turn over to the defendant the proceeds of the sales but, instead, sold the marijuana for $6,000 and kept the money. Such testimony, if believed by the jury, clearly would establish a motive for the crimes with which defendant was charged. Additionally, Pearson testified that while defendant was sitting in deceased's car on the date of the alleged kidnapping, he held a gun to deceased's head and said, "I just want my money, that's all I want, my money." It is well established in this jurisdiction that where evidence tends to prove a motive on the part of the accused to commit the crime charged, it is admissible even though it discloses the commission of another offense by the accused. *State v. Patterson*, 288 N.C. 553, 567, 220 S.E. 2d 600, 611 (1975); *State v. McClain*, 240 N.C. 171, 176, 81 S.E. 2d 364, 367 (1954).

[6] Defendant next contends that the trial court improperly engaged in cross-examination of a witness and thereby expressed his opinion on a question of fact in violation of G.S. 15A-1222. During the questioning of the witness James Pearson, the trial court at one point interrupted and inquired of the witness if he had seen any money change hands when defendant gave marijuana to the deceased. Defendant contends that this intimated that the trial court was of the opinion that drug dealing transactions had taken place, a collateral issue not otherwise relevant and which was improper because it dealt with alleged prior criminal activity.

We find no merit in this contention. It is entirely proper for a trial judge to question a witness in order to clarify or promote a

better understanding of the testimony being given. *State v. Hunt*, 297 N.C. 258, 254 S.E. 2d 591 (1979). Here the questions asked by the trial court merely clarified the witness' answers and we find nothing which the jury could interpret as an expression of the trial court's opinion. This assignment of error is overruled.

[7]   Defendant next asserts that the trial court erred in denying his motion for mistrial. During the direct examination of the witness James Pearson, the assistant district attorney inquired if he had worked his "herb doctor magic" in a case previously tried. The court sustained defendant's objection to this question. On re-direct examination, the prosecutor asked, "Whose case was it that you worked your magic on me and caused me to lose?" The witness answered, "Norwood." Defendant's objection was sustained, and the jury was instructed to disregard the answer. Defendant then, in the absence of the jury, moved for a mistrial. Defendant contended that the purpose for asking the question was to elicit testimony concerning defendant's prior criminal record and that, therefore, he was prejudiced thereby. In response to the trial court, the assistant district attorney stated his purpose in asking the question was to establish the close relationship between the witness and the defendant. The trial court found no justification for the question and instructed the assistant district attorney not to mention anything about defendant's prior record, and the motion for mistrial was denied.

The trial court correctly noted that there was no justification for the question and promptly sustained the defendant's objection. We do not perceive, however, that defendant suffered any prejudice from this exchange. No reference to any prior charges against defendant was mentioned in the presence of the jury. Indeed, the question itself indicated that the assistant district attorney had lost the case, whatever case it might have been. The trial court instructed the jury to disregard both the question and the answer and we presume that they heeded this instruction. This assignment of error is overruled.

Defendant next contends that the trial court erred in allowing certain testimony from Officer H. D. Jones of the Charlotte Police Department as corroborative testimony, the purpose for which it was expressly limited by the trial court. Defendant's argument is strained and completely without merit.

State v. Norwood

Officer Jones testified that the witness Pearson told him a week-and-a-half after the alleged kidnapping that defendant had kidnapped the deceased. Further, he testified that Pearson had stated to him that defendant had handcuffed the deceased, placed him in the trunk of deceased's car and drove off in the car. The trial court gave the appropriate instructions to the jury with respect to limiting the testimony to corroborative purposes. Our review of the record discloses that the witness Pearson had testified to essentially the same facts. The testimony was clearly corroborative.

[8] Defendant also argues that the testimony was inadmissible hearsay because the witness Pearson had not testified that he made any statement to Officer Jones and this denied defense counsel the right to cross-examine the witness Pearson with regard to the statement attributed to him. Again, defendant's contention is without merit. Officer Jones testified that Pearson made the statement to him and defendant had every opportunity and right to recall the witness Pearson if he desired to cross-examine him. No such request was made.

In his brief, defendant has grouped sixty-two exceptions into twenty-two assignments of error and has presented twenty-two arguments. Those of even arguable merit have been addressed above. The remaining arguments are patently without merit and we will not clutter the pages of our reports or waste valuable time by discussing them. We add, however, that we have examined each assignment and have scrutinized the record to make sure that no prejudicial error occurred. We have also heeded defendant's request that we review the instructions of the trial court, due to the seriousness of the charge and the extent of the sentence, to determine whether error exists. We find no error in the instructions or the trial.

We conclude that defendant had a fair trial, free from prejudicial error.

No error.