STATE OF NORTH CAROLINA v. WILLIAM FRANKLIN EFIRD

No. 226A83

(Filed 6 December 1983)

1. Criminal Law § 82.2— physician-patient privilege—records of county public health department—admissibility in evidence

In this prosecution of defendant for the first degree rape of his seven-year-old stepdaughter in which the evidence showed that the victim suffered from gonorrhea, the trial court properly permitted a county public health nurse to testify that records of her office revealed that defendant was treated for gonorrhea two days after the crime since, (1) under G.S. 8-53.1, the physician-patient privilege is not available in cases involving child abuse, and the medical records were admissible as evidence with regard to the cause or source of the victim's disease; (2) the trial judge properly used his discre-

tionary authority to compel disclosure under G.S. 8-53 upon finding that such disclosure was necessary to a proper administration of justice; and (3) there was no indication that the public health nurse had prepared the medical records under the direction of a physician, and the nurse's testimony was thus not privileged under G.S. 8-53.

**2. Criminal Law § 99.9— examination of witness by trial judge—no expression of opinion**

In a prosecution for rape of a seven-year-old child, the trial court did not express an opinion in asking questions of the victim's physician concerning how long the victim had had gonorrhea before the disease was diagnosed as such by the physician.

**3. Rape and Allied Offenses § 5— rape of child—sufficiency of evidence**

Testimony by the seven-year-old victim was sufficient to overcome defendant's motion for nonsuit in a prosecution for first degree rape under G.S. 14-27.2(a)(1).

DEFENDANT appeals as a matter of right from a mandatory life sentence entered by *Wood, J.,* during 13 December 1982 Criminal Session of Superior Court, CABARRUS County.

Defendant was tried upon an indictment, proper in form, charging him, pursuant to N.C. Gen. Stat. § 14-27.2(a)(1), with the first degree rape of Tammy Renee Efird, a child under twelve years of age. On 15 December 1982, the jury returned a verdict finding the defendant guilty of first degree rape.

The evidence for the State tended to show that on 5 June 1982 Tammy Renee Efird, age seven years and ten months, and her two younger brothers were taken by their mother, Judy Pegg Efird, to visit Tammy's stepfather, the defendant William Franklin Efird. Upon their arrival, the children were instructed by the defendant to take a nap. The only bedroom in the house contained two beds. Defendant placed Tammy in the smaller of the two beds, while placing her brothers in the other larger bed.

The brothers fell asleep but Tammy remained awake watching television while lying in bed. Thereafter, according to Tammy, the defendant entered the bedroom, moved the sleeping brothers to the smaller bed and then asked Tammy to get into the bigger bed with him. She refused to lie down with him because she was scared. She also refused to remove her clothes as he requested.

The defendant completely disrobed himself and then proceeded to undress Tammy. With both of them naked, he again told Tammy to get into the bed. When Tammy began crying after refusing him, the defendant picked her up and put her on the bed with him.

Tammy testified that the defendant "rolled over and stuck his worm" into her and "bounced up and down." When the defendant removed himself from Tammy, he told her he would beat her if she told anyone. Frightened, Tammy did not relate what had occurred to her mother when she returned home the next day.

On 12 August 1982, Tammy was taken by her mother and aunt, Barbara Honeycutt, to the office of Dr. David A. Lockhart, a physician who specializes in pediatrics. Dr. Lockhart examined Tammy and determined that a vaginal discharge she had been experiencing was caused by the venereal disease gonorrhea.

While returning home from the doctor's office, Tammy implicated her mother's boyfriend, Joel Lott. Later that evening Tammy came to her mother crying and admitted she had told a lie. She had been afraid to tell the truth because the defendant had threatened to beat her if she ever revealed that he had sexual intercourse with her. Tammy recited the same events to her aunt and also to Lisa Sloop, a Protective Services worker with the Cabarrus County Department of Social Services.

At trial the State introduced into evidence, through Janice Odell, a public health nurse supervisor with the Cabarrus County Health Department, the results of tests administered by her office. Those records revealed that both the defendant and Tammy's mother were treated for venereal disease on 7 June 1982. The records further showed that Joel Lott presented himself for treatment for venereal disease on 18 August 1982.

The defendant took the stand and denied any sexual contact with Tammy during her overnight visit with him. He further testified that he had never had sexual intercourse with Tammy.

*Rufus L. Edmisten, Attorney General, by George W. Boylan, Assistant Attorney General, for the State.*

*James C. Johnson, Jr., for the defendant.*

COPELAND, Justice.

[1]   The defendant presents four assignments of error. He first claims that his medical records maintained by the Cabarrus County Health Department were improperly allowed into evidence. The State offered testimony that the defendant was afflicted with gonorrhea for the purpose of corroborating the testimony of the child that the defendant was her assailant. The defendant argues that such introduction did not constitute an exception under N.C. Gen. Stat. § 8-53.3, and thus was a violation of the confidential communication privilege between patient and physician. We disagree.

First, we note that the defendant has mistakenly relied upon N.C. Gen. Stat. § 8-53.3, which concerns communications between a psychologist and his client. Obviously, such a relationship does not exist in the case sub judice. The applicable statute relating to the physician-patient privilege is N.C. Gen. Stat. § 8-53. However, we have determined that N.C. Gen. Stat. § 8-53.1 is controlling here. This statute provides:

> Notwithstanding the provisions of G.S. 8-53, the physician-patient privilege shall not be ground for excluding evidence regarding the abuse or neglect of a child under the age of 16 years or regarding an illness of or injuries to such child or the cause thereof in any judicial proceeding related to a report pursuant to the North Carolina Juvenile Code, Subchapter XI of Chapter 7A of the General Statutes of North Carolina.

This statute is read in pari materia with our Juvenile Code, in particular, N.C. Gen. Stat. § 7A-551 which states:

> Neither the physician-patient privilege nor the husband-wife privilege shall be grounds for excluding evidence of abuse or neglect in any judicial proceeding (civil, criminal, or juvenile) in which a juvenile's abuse or neglect is in issue nor in any judicial proceeding resulting from a report submitted under this Article, both as said privileges relate to the competency of the witness and to the exclusion of confidential communications.

In essence, the physician-patient privilege, created by N.C. Gen. Stat. § 8-53, is not available in cases involving child abuse.

According to the evidence, the Child Welfare Unit of the Cabarrus County Department of Social Services received a complaint of child abuse involving Tammy Efird. Their investigations prompted initiation of the charges against the defendant. There was unequivocal evidence that the seven-year-old girl in this case had been sexually abused, which would invoke applicability of these statutes. Therefore, these medical records were admissible as evidence with regard to the cause or source of her disease.

It appears that the trial judge relied upon the exception to the physician-patient privilege of N.C. Gen. Stat. § 8-53, which grants a trial judge discretionary authority to compel disclosure if he finds such disclosure to be "necessary to a proper administration of justice." Although the trial court should have relied upon N.C. Gen. Stat. § 8-53.1, as we have stated earlier, it was not prejudicial error for it to use N.C. Gen. Stat. § 8-53. At trial and in his separate order dated 14 December 1982 (allowed as An Addendum to Record on Appeal by this Court), Judge Wood found the following: the alleged assault occurred on 5 June 1982; the defendant received treatment for gonorrhea on 7 June 1982; Tammy was determined to be afflicted with gonorrhea on 12 August 1982; Tammy had similar vaginal irritations which "could have been gonorrhea" on 18 June 1982; and that females generally contract gonorrhea through sexual intercourse with an infected man. The trial court then concluded that the medical records were relevant to a litigated issue. We hold that the trial court's findings and conclusions were sufficient to take these records out of the privileged communication rule of N.C. Gen. Stat. § 8-53.

The statute affords the trial judges wide discretion in determining what is necessary for a proper administration of justice. *State v. Taylor,* 304 N.C. 249, 271, 283 S.E. 2d 761, 776 (1981); 1 Brandis on N.C. Evidence § 63 (1982). Justice Moore in *Sims v. Charlotte Liberty Mutual Ins. Co.,* 257 N.C. 32, 39, 125 S.E. 2d 326, 331 (1962) emphasized that "[j]udges should not hesitate to require the disclosure where it appears to them to be necessary in order that the truth be known and justice be done." We are satisfied that the trial judge did not abuse his discretion.

Finally, with regard to this first assignment of error, the physician-patient privilege statute does not require exclusion unless defendant's communication is with a "person duly author-

ized to practice physic" (i.e. medicine). This privilege has been interpreted to include entries in hospital records made by or under the direction of physicians and surgeons. *Sims*, at 38, 125 S.E. 2d at 331. However, this statute does not include "nurses, technicians and others; unless they were assisting, or acting under the direction of a physician or surgeon. *Id.*

In this case nothing in the record before us indicates that Nurse Janice Odell had prepared the medical records in question under the direction of a physician. Thus, the testimony of Nurse Odell was not privileged information under N.C. Gen. Stat. § 8-53. The records offered through Nurse Odell were relevant and competent evidence, which were properly admitted.

[2] Defendant's next two assignments of error concern the questioning of the State's witness by the trial court. The defendant contends that Judge Wood, in asking the victim's physician certain questions, elicited answers to matters material to the State's case that "otherwise would not have come in against the defendant." Further, he argues that the judge implied an opinion favorable to the State regarding this testimony, which prejudiced the jury against the defendant. The two pertinent exchanges appear below:

THE COURT: When did you see her previously?

A. It was in July. I can look at the date. She was seen in the Emergency Room July 18. Her complaint at that time was going to the bathroom a lot, burning when she passed her water, and lower abdominal pain.

Q. Could that have been gonorrhea at that time, looking back on it now?

A. Retrospectively, I'm sure it could have been.

Q. Now what is the normal course of conduct for the disease?

A. Well—

THE COURT: That was July when?

A. July 18.

Several minutes later the court then inquired:

THE COURT: Let me ask a question to try to clarify this thing in my mind. Is there any way you can tell or do you have an opinion after examining this little girl on the 12th of August, 1982, as to how long she had had gonorrhea?

A. Well, looking at the amount of infection she had, I would say she had had it a fair amount of time. I do have a time from July when I saw her until August, and I would say that more than likely, she had it in July when I saw her in the Emergency Room, and that progressed rather extensively from that time.

THE COURT: It is your opinion she probably had it in July when you saw her in the Emergency Room?

A. More than likely. She didn't have it enough when I examined her, didn't have enough discharge for me to consider the diagnosis. It's a diagnosis that more and more we're beginning to consider in any child that has urinary symptoms. We're beginning to look at it more and more.

THE COURT: You didn't run a test on her in July?

A. Did not. Just the urine.

THE COURT: Right, just the urine test. Now, gonorrhea untreated would just go on and on?

A. It could go on and on, but usually, like in her case, it would come to a head. It would get so bad that somebody — some obvious treatment would be indicated. I think she was brought in because the mother couldn't handle the discharge.

THE COURT: So much discharge the mother couldn't handle it?

A. Yes.

After careful scrutiny, we have determined that Judge Wood's inquiry did not adversely prejudice the defendant. Numerous cases recognize the well established rule that the judge may, on his own prerogative, participate in the examination of witnesses. *State v. Pearce*, 296 N.C. 281, 250 S.E. 2d 640 (1979); 1 Brandis on N.C. Evidence § 37 (1982). In fact, the trial judge has a duty to question a witness in order to clarify the testimony be-

ing given, *State v. Norwood,* 303 N.C. 473, 279 S.E. 2d 550 (1981); *State v. Hunt,* 297 N.C. 258, 254 S.E. 2d 591 (1979), or "to elicit overlooked, pertinent facts." *State v. Monk,* 291 N.C. 37, 50, 229 S.E. 2d 163, 171 (1976). However, the trial judge must carefully scrutinize his questioning to insure that it does not impermissively suggest an opinion as to the guilt or innocence of a criminal defendant, the credibility of a witness, or any other matter which must be determined by a jury. *Hunt* at 263, 254 S.E. 2d at 596.

In the first section of the challenged inquiry, Judge Wood attempted to elicit the date upon which an event occurred. The trial court's second intervention clearly reveals an attempt to clarify and promote a better understanding of the doctor's testimony. Further, we find nothing in either exchange which the jury could reasonably interpret as an expression of the court's opinion.

[3] Finally, defendant asserts that the trial court erred in denying his motion to dismiss at the close of the State's evidence. Tammy Renee Efird testified unequivocally as to the assault upon her by the defendant. This testimony alone, when considered in the light most favorable to the State, as we must do, is sufficient to overcome defendant's motion for nonsuit.

We hold that the defendant received a fair trial, free from prejudicial error.

No error.